Peter M. CHACOS, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Respondent.

No. C7–84–1803.

Court of Appeals of Minnesota.

May 28, 1985.

Edward F. Rooney, Mirviss, Seltz, Seltz & Rooney, P.A., Minneapolis, for appellant.

R. Gregory Stephens, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for respondent.

Heard, considered and decided by PARKER, P.J., and LANSING and HUSPENI, JJ.

## OPINION

LANSING, Judge.

Peter Chacos appeals from a judgment entered after a jury found a lapse of medical treatment and disability for more than one year, making him ineligible for basic economic loss benefits under his State Farm automobile insurance policy. He contends the trial court erred in instructing the jury on the meaning of "inability to work" in Minn.Stat. § 65B.44, subd. 3. We reverse and remand for a new trial.

## FACTS

Chacos was involved in an automobile accident on July 16, 1980, when a truck driver ran a stop sign and broadsided his car on the driver's side. Chacos did not appear to be injured then, but he left work the next day because of stiffness and pain in his lower back. At the time of the accident Chacos had operated his own business, called PMC Store Fixtures, Inc., for about four years. He bought and resold used steel shelving and fixtures to retail merchants. The work was physically demanding because he had to transport heavy steel shelving from the point of purchase to his warehouse. Balance sheets submitted at trial showed that PMC was becoming progressively more profitable. Chacos was PMC's sole employee.

Two days after the accident Chacos saw his family physician. A few weeks later the family physician referred him to an orthopedist. The orthopedist saw Chacos twice and diagnosed severe muscle damage. An x-ray was normal. Muscle relaxants and pain medication were prescribed, in addition to physical therapy consisting of exercises, heat application, and massage. The last treatment by the therapist took place on November 26, 1980. The therapist wrote in Chacos' medical chart that day:

Pt. has completed the prescribed [therapy] to his low back. He has made significant progress in that he no longer has constant pain. He is sleeping well. He does [increase] his discomfort when he sits for prolonged periods or does strenuous activity. He will go back to work on 11/28/80 where he does a lot of lifting. * * * If he has problems after returning to work he will contact [the orthopedist].

State Farm, the company which insured Chacos' car, paid his medical expenses and income loss benefits from July 17 through November 24, 1980. Chacos testified that his wife continued to give him the heat and massage therapy at home; however, he did not see a doctor again until September 1982, when he began receiving treatment for headaches and back pain from Sidney Shapiro, M.D., a neurologist.

Dr. Shapiro found Chacos had moderate limitation of motion of the lower back in all directions, signs of muscle spasm, and significantly impaired ability to raise his legs. Shapiro did not x-ray Chacos because Chacos had been exposed to radiation when he was serving in the military and had been advised to avoid x-ray exposure in the future. Shapiro diagnosed a disc injury in the lower back.

Shapiro testified that he could not advance a medical opinion that Chacos was disabled between November 1980 and September 1982 because Shapiro had not seen him during that period. However, he said it was "quite probable" that Chacos had been unable to work at his business.

Chacos and his wife were the only witnesses at trial. Dr. Shapiro's deposition was read to the jury. Chacos testified that he derived no income from PMC after the accident. He said he gave up hope of resuming the operation of his business after Dr. Shapiro diagnosed a disc injury in September 1982. He then started looking for other jobs that did not require as much activity. He began working a sales job at C.O.M.B. Co. in July 1983; in the meantime, he said, his wife went back to work, he took out personal loans, mortgaged his cars, and sold his house to make ends meet.

State Farm did not dispute that Chacos was disabled when he saw Dr. Shapiro in September 1982, but argued that it was not liable for no-fault benefits because there had been a lapse in medical treatment and disability for more than one year. *See* Minn.Stat. § 65B.55, subd. 2 (1984). The only question presented at trial was whether there had been a lapse; the amount of income loss was not at issue. State Farm's attorney stressed, in arguing that Chacos was not disabled during the 22-month period between November 1980 and September 1982, that Chacos was well-qualified for retail management jobs and that Chacos had declined an opportunity to work in the East. In final argument, State Farm said:

> Now, you will recall that Mr. Chacos on the stand said that, "I had a good shot of working out East for a company after the accident, but I didn't like it, my wife didn't like it, and I don't like living out East."

I can't blame him for not wanting to live out East. I like living here in Minnesota, too, but the fact remains we can't be responsible for age discrimination—as he mentioned, he may have had some age discrimination—or the crummy economy or the fact that maybe he would have to take a job out East. *Again, if he can do that job, then he has got to do it.*

(Emphasis added).

Chacos requested a jury instruction defining "total disability." He also asked the court to instruct the jury that a disabled person is not required to seek substitute employment outside his own community. The trial court denied both requests and instructed the jury only on the definition of inability to work contained in Minn.Stat. § 65B.44, subd. 3. The jury found a lapse of both medical treatment and disability for more than one year. Chacos appeals.

## ISSUES

1. Did the trial court err in instructing the jury on the meaning of "inability to work" as provided in Minn.Stat. § 65B.44, subd. 3?

2. Did the trial court err in refusing to grant a judgment notwithstanding the verdict?

## ANALYSIS

### I

Minn.Stat. § 65B.55, subd. 2 (1984), provides that a lapse in disability and medical treatment of more than one year may terminate the no-fault carrier's duty to pay income loss benefits:

> A plan of reparation security may provide that in any instance where a lapse occurs in the period of disability or in the medical treatment of a person with respect to whose injury basic economic loss benefits have been paid and a person subsequently claims additional benefits based upon an alleged recurrence of the

injury for which the original claim for benefits was made, the obligor may require reasonable medical proof of such alleged recurrence; * * * *such coverages may contain a provision terminating eligibility for benefits after a prescribed period of lapse of disability and medical treatment, which period shall not be less than one year.*

(Emphasis added). Although the State Farm insurance policy was not offered or received at trial, both parties have litigated the issue on the assumption that the State Farm policy contains a lapse clause like the one permitted in the statute.

The trial court instructed the jury on "inability to work" by reading the special verdict form:

From approximately November 28, 1980, the approximate date that State Farm ceased paying wage loss to the claimant, until September 14, 1982, the date that Mr. Chacos first saw Dr. Shapiro, did Mr. Chacos have a disability which prevented him from engaging in any substantial gainful occupation or employment on a regular basis, for wage or profit for which he is or may by training become reasonably qualified?

This instruction was based on one paragraph of Minn.Stat. § 65B.44, subd. 3, which provides in relevant part:

Disability and income loss benefits shall provide compensation for * * * loss of present and future gross income from inability to work proximately caused by the * * * injury.

      \*     \*     \*     \*     \*     \*

*Compensation* under this subdivision *shall be reduced by any income from* substitute work actually performed by the injured person or by income the injured person would have earned in *available appropriate substitute work which he was capable of performing but unreasonably failed to undertake.*

For purposes of this section "inability to work" means disability which prevents the injured person from engaging in any substantial gainful occupation or employment on a regular basis, for wage or profit, for which he is or may by training become reasonably qualified.

(Emphasis added).

Chacos argues first that the trial court erred in refusing to give this additional instruction defining disability:

The words "totally disabled" are not to be literally construed so as to mean a state of absolute helplessness, but rather a state of inability to do all the substantial and material acts necessary to the carrying on of the insured's calling in substantially his customary and usual manner.

This instruction was derived from *Stroncek v. Berkshire Life Insurance Co.,* 292 Minn. 57, 60–61, 193 N.W.2d 286, 288 (1971), which involved the interpretation of a disability insurance policy. The trial court correctly refused to give this instruction because the statute defines inability to work without requiring a "total disability." The requested instruction might have confused the jurors and caused them to believe a total disability was required.

Chacos also requested an instruction reading:

A disabled person is not required to seek substitute employment outside his own community.

This instruction was derived from *Fredenburg v. Control Data Corp.,* 311 N.W.2d 860, 864–65 (Minn.1981), a case involving the definition of "temporary total disability" under the worker's compensation statute.

Chacos argues that the trial court should have given the requested instruction because the purposes of the No-Fault Act and the Worker's Compensation Act are similar. However, the worker's compensation concept of temporary total disability "is primarily dependent upon the employee's ability to find and hold a job, not his physical condition." *Id.* at 864 (quoting *Schulte v. C.H. Peterson Construction Co.,* 278 Minn. 79, 83, 153 N.W.2d 130, 134 (1967)). The no-fault definition, in contrast, focuses primarily on the physical condition by defining inability to work as a disability

which prevents the injured person from working regularly. *See generally Darby v. American Family Insurance Co.,* 356 N.W.2d 838, 840 (Minn.Ct.App.1984), *petition for rev. denied,* (Minn. Feb. 19, 1985) (unavailability of a job does not constitute "inability to work").

It is not the availability of work but the existence of a disability preventing work which determines the right to income loss benefits. Partially disabled people who are unable to work full-time or return to the same type of work are "unable to work" within the meaning of the statute and are thus eligible for no-fault benefits. *See Id.* at 840; *cf. Koller v. American Family Mutual Insurance Co.,* 366 N.W.2d 684 (Minn.Ct.App.1985) (an insured who was unable to return to a prior job is entitled to income loss benefits until he has become retrained and qualified for employment); Steenson, *A Primer on Minnesota No-Fault Automobile Insurance,* 7 Wm. Mitchell L.Rev. 313, 332–34 (1981) (income loss due to any inability to work should be compensable). Under the statutory scheme, the *availability* of substitute work is material only in computing the amount of income loss benefits. *See generally Prax v. State Farm Mutual Automobile Insurance Co.,* 322 N.W.2d 752 (Minn. 1982); *Darby,* 356 N.W.2d at 840.

Although it properly rejected the two instructions Chacos requested, by reading only that paragraph of the statute defining "inability to work," the trial court gave an inadequate instruction of law. The instruction was incomplete because it did not tell the jury that partially disabled persons may be unable to work within the meaning of Minn.Stat. § 65B.44, subd. 3, and because it did not clarify that the availability of substitute work is material only in computing the amount of income loss benefits rather than the determination of disability. State Farm argues that the error is not reversible because counsel were free to argue their own statutory interpre-

tations to the jury. We disagree. In *Hagen v. Snow,* 244 Minn. 101, 69 N.W.2d 100 (1955), the court said:

> [E]ven a request for an instruction which is not entirely perfect may in some situations impose upon the court the duty to give a more specific instruction on a particular issue, where it soundly appears that such an instruction is needful to enable the jury to intelligently determine the question.

Id. at 106, 69 N.W.2d at 103 (quoting *Chicago & N.W. Ry. Co. v. Green,* 164 F.2d 55, 61 (8th Cir.1947)). Chacos objected sufficiently to the instruction's definition of disability. Under the circumstances, the trial court's failure to correct and give the proposed instruction was prejudicial error, and we therefore order a new trial.

Finally, in *Kirsila v. State Farm Automobile Insurance Co.,* No. 763885 (Henn. Cty.Dist.Ct. Stipulation of Settlement and Order for Dismissal Jan. 31, 1980), State Farm settled a proposed class action brought to clarify the meaning of "disability" under the lapse statute. According to the stipulation filed with the district court, State Farm agreed to interpret "disability" as used in its policy lapse provision as "any reduction in ability to work or perform daily activities whether by permanent injury or disfigurement." At oral argument we questioned State Farm's attorney, who signed the stipulation in *Kirsila,* about the effect of the stipulation on this case. His answers were unsatisfactory. We remand the issue to the trial court to inquire further as to the applicability of the stipulation and the advisability of sanctions for failure to disclose the agreement to the court or to opposing counsel.

## II

Chacos also argues the trial court erred in refusing to grant a JNOV because State Farm presented no evidence that he was not disabled.[1] A JNOV may be grant-

---

**1.** After oral argument, Chacos moved to withdraw his request for a JNOV on the ground that entry of a JNOV might preclude additional causes of action against the respondent based on *Kirsila.* State Farm did not oppose Chacos' mo-

ed only when the evidence is so overwhelming on one side that reasonable minds cannot differ as to the proper outcome. *See Lamb v. Jordan,* 333 N.W.2d 852, 855 (Minn.1983). All the evidence must be taken into account and viewed in the light most favorable to the verdict. *Id.* Chacos' failure to seek medical treatment raises an inference that he was able to work, which is sufficient to avoid a JNOV.

### DECISION

Appellant is entitled to a new trial because jury instructions inadequately defined "inability to work" under Minn.Stat. § 65B.44, subd. 3. The trial court did not err in refusing to grant a JNOV.

Reversed and remanded for a new trial.

tion; however, in view of our disposition, we          deny the motion.