Vern BREGIER, Appellant,

v.

The NATIONAL FAMILY INSURANCE
COMPANY, Respondent.

No. C7–86–2180.

Court of Appeals of Minnesota.

Sept. 8, 1987.

Paul T. Benshoof, Smith, Carpenter, Benshoof & Klein, P.A., Bemidji, for appellant.

Kurt J. Marben, Charlson & Marben, P.A., Thief River Falls, for respondent.

Heard, considered and decided by POPOVICH, C.J., FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appeal is from the entry of judgment against appellant Vern Bregier in his action against his insurer, respondent National Family Insurance (National), for declaratory judgment and for relief under the Unfair Claims Practices Act, Minn.Stat. §§ 72A.17–.32 (1986). Bregier also appeals an order denying his motions for a new trial and judgment notwithstanding the verdict. We affirm.

## FACTS

Appellant Vern Bregier was involved in an automobile accident on Saturday, November 27, 1982. Bregier and his wife were stopped at an intersection when they were struck from behind, forcing their car into the car in front of them. Bregier was insured under three policies by National.

The following Monday, Bregier returned to his job as a welder at DMH Company, a manufacturer of mobile homes. On Tuesday, he went to his chiropractor, whom he had been seeing for low back pain, and complained of stiffness and pain in his neck and left arm. On December 13, Bregier saw his family doctor, who diagnosed an "acute cervical muscle strain," commonly known as a whiplash neck injury. Bregier continued to work and to take chiropractic treatment.

In October 1983, Bregier was referred to Dr. Garske, an orthopedic surgeon, who reached the same diagnosis and prescribed three weeks of physical therapy, which Bregier completed. The symptoms continued, however, and Bregier was referred to other specialists.

On June 25, 1984, Bregier returned to Dr. Garske, complaining of chronic pain in his neck and upper arms. Dr. Garske recommended that Bregier stop working for a month. When Bregier did not improve, and his tenderness and limitation of motion continued, Dr. Garske kept him off work for a second month and referred him to a neurologist, Dr. Tennebaum.

Dr. Tennebaum advised some restrictions, including no repetitive reaching and no lifting of more than 24 pounds. He found some limitation of motion in the

neck, but also stated Bregier told him he had quit his welding job because of pain in his knees. Dr. Tennebaum stated the neck discomfort was affecting Bregier but "the knee problem is what finally tipped it over and he stopped working." Dr. Tennebaum, however, testified Bregier shouldn't be welding due to his neck strain.

Bregier's supervisor at DMH, Tom Huot, testified Bregier had complained after the accident about difficulty in lifting his arms. Bregier had trouble doing overhead welding, but this did not jeopardize his job. Huot testified the job involved wearing a helmet with a visor, which the welders flipped up and down with a jerk of the head.

DMH terminated Bregier in December 1984, when he had been out on medical leave over 6 months. National paid him wage loss benefits from June 1984, when he left work, through July 1985.

In April 1985, Bregier was examined by Dr. Clayburgh, an orthopedic surgeon retained by National. Dr. Clayburgh found Bregier's x-rays normal, and found no limitation of motion in his neck. He concluded Bregier had suffered a cervical strain in the accident, but was physically capable of working a full day. He stated Bregier would need a great deal of reassurance that he was fit to work because of the amount of medical attention his problem had received. On cross-examination, he stated:

> [Bregier] could be productive in work, including work of a welder, but he'd have to progress slowly and gradually build up.

Clayburgh conceded that a cervical strain could be aggravated by working with the head in an awkward position, twisting the neck, or lifting heavy weights.

In September 1985, Dr. Tennebaum again examined Bregier, giving the same diagnosis of cervical strain and rating it a 15% partial permanent disability. Dr. Garske recommended the following restrictions: no lifting of more than 20 pounds, no

pushing and pulling, and no full-time work at that time. Bregier presented the testimony of a psychologist and vocational consultant that he is "occupationally disabled as a welder."

Before trial, Bregier moved to prohibit defense counsel from making any reference to the settlement Bregier had received from the other driver in the accident. Defense counsel agreed not to mention it. During closing argument, defense counsel read a reference to the personal injury settlement which appeared in Bregier's Veteran's Administration file. The statement was to the effect "plaintiff was not in a hurry to get back to work because of a settlement for the car accident." The parties agree a cautionary instruction was given to the jury. The VA file, offered by Bregier, was admitted into evidence.

The jury found Bregier's injury did not cause "inability to work." The trial court denied Bregier's motions for judgment notwithstanding the verdict or a new trial. On appeal, he challenges several evidentiary rulings, as well as the jury instructions and special verdict form.

## ISSUES

1. Did the court commit reversible error in its evidentiary rulings?

2. Did defense counsel commit prejudicial misconduct by referring to the personal injury settlement?

3. Did the trial court err in instructing the jury on "inability to work"?

4. Was the evidence sufficient to support the verdict?

## ANALYSIS

### 1. *Evidentiary rulings*

■ Bregier first argues the trial court abused its discretion in allowing National's claims adjuster to testify the insurer would not have paid benefits in June 1984 if it had had Dr. Clayburgh's report. Bregier himself called the adjuster as a witness to

establish that National had paid wage loss benefits, evidence which National had moved before trial to exclude. Thus, Bregier himself had sought to use evidence on the same issue as the evidence he later sought to exclude. *See State v. Schweppe*, 306 Minn. 395, 237 N.W.2d 609 (1975). The trial court did not abuse its discretion in allowing this inquiry.

Bregier also claims the court abused its discretion in allowing questioning as to periods of shutdown at DMH. Under the no-fault statute, the availability of work does not determine the right to income loss benefits. *Chacos v. State Farm Mutual Automobile Insurance Co.*, 368 N.W.2d 343, 347 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Aug. 19, 1985). The trial court, however, properly instructed the jury on the effect of unavailability of work. *See Conover v. Northern States Power Co.*, 313 N.W.2d 397 (Minn.1981) (jury instruction to ignore statements of law not made by the court cured any effect of admission of expert witness's opinion of a code violation). There was no prejudicial error.

Finally, Bregier contends the trial court abused its discretion in admitting several references to his prior low back injury, the claims he may or may not have filed for that injury and for exposure to Agent Orange, and his alleged dissatisfaction with the government's refusal to recognize any disability. National claims this evidence was relevant to show Bregier was "malingering."

The No-Fault Act defines inability to work in terms of physical functioning. *Chacos v. State Farm*, 368 N.W.2d at 346–47. We do not believe the statutory definition is broad enough to allow inquiry into the insured's state of mind or his prior injuries and claims, no matter how unrelated to the claimed disabling injury. *Cf. Nelson v. Austin Transit, Inc.*, 271 Minn. 377, 135 N.W.2d 886 (1965) (personal injury plaintiff suing for back injuries could be cross-examined on prior claims for back injuries).

However, in this case Bregier himself opened the door to such evidence by presenting evidence he was depressed due to his inability to perform his job. National was merely rebutting such evidence by presenting evidence that Bregier was not motivated to return to work, either because of other injuries or prior claims which he felt entitled him to a disability income. The trial court did not abuse its discretion in allowing this evidence.

2. *Counsel's reference to the settlement*

National's counsel referred to the personal injury settlement in closing argument, in apparent violation of an agreement not to do so. This reference plainly had a potential for prejudicial impact. However, the court gave a cautionary instruction to the jury at the time of the statement and directed the jury to disregard it. The reference to the settlement was a single, brief reference, and Bregier's counsel agreed to the language of the cautionary instruction. *Cf. Clark v. Johnson Brothers Construction*, 370 N.W.2d 896, 899–900 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Sept. 19, 1985) (defense counsel's repeated references to insurance in closing argument were highly prejudicial and the trial court refused to give a limiting instruction).

3. *Jury instructions and special verdict*

Bregier contends the court erred in instructing the jury on "inability to work" because it refused to include language indicating an insured unable to return to a previous job is entitled to benefits until he is retrained. *Koller v. American Family Mutual Insurance Co.*, 366 N.W.2d 684, 685 (Minn.Ct.App.1985). Bregier argues the jury may have found he was not disabled because he was able to work on his farm.

The trial court gave the statutory definition of "inability to work." Minn.Stat. § 65B.44, subd. 3 (1986). It also gave the following instruction based upon language from *Chacos v. State Farm*, 368 N.W.2d at 347:

A partially disabled person who is unable to work full time or return to the same type of work he formerly performed has inability to work within the meaning of the law.

This instruction not only indicated partial disability is sufficient, but also correctly referred to Bregier's previous employment as the proper standard of "inability to work." The *Koller* language is merely more specific as to the period of time benefits may be paid. Moreover, work "as a welder" was the work Bregier formerly performed. There is little indication in the record that the jury could have focused on Bregier's ability to do farm work despite the instruction given.

Bregier carries his complaint regarding omission of the phrase "as a welder" to the wording of a special interrogatory also.[1] The instruction on "inability to work," however, was also sufficiently specific that the trial court did not abuse its discretion in omitting the phrase "as a welder" from the special verdict interrogatory. *See Hill v. Okay Construction Co.*, 312 Minn. 324, 252 N.W.2d 107 (1977) (trial court has broad discretion in framing a special verdict question).

He contends that the court erred in framing the second interrogatory by including the dates National paid benefits. We find no merit in this argument. Bregier claimed a disability existed from the time he left work. The trial court's framing of the time period could well have helped Bregier, since it included the earlier period when the medical diagnosis of his disability was undisputed, when he was off work solely on the advice of his physician, and National was arguably admitting disability by paying benefits.

### 4. *Sufficiency of the evidence*

■ Bregier contends the evidence does not support the jury's verdict that the whiplash injury did not cause "inability to work." He argues the medical testimony of a disabling condition was unimpeached

and unrebutted. *See Ruppert v. Milwaukee Mutual Insurance Co.*, 392 N.W.2d 550 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Oct. 22, 1986) (jury cannot disregard positive testimony of an unimpeached witness unless improbable or inconsistent). Bregier contends not even Dr. Clayburgh's testimony supports a finding Bregier was able to return to full-time work as a welder.

This court must view the evidence in the light most favorable to the jury verdict. *Cobb v. Aetna Life Insurance Co.*, 274 N.W.2d 911, 917 (Minn.1979). Viewing Dr. Clayburgh's testimony in that light, he advised a gradual return to work primarily because of Bregier's need for mental reassurance of his abilities following a lengthy layoff.

Dr. Clayburgh testified Bregier was physically capable of working a full day. He could have been more explicit in stating he was capable of working a full day *as a welder*. However, not all the evidence showed the DMH welding job was heavy or even medium-level work. Bregier stated in his deposition, a statement introduced at trial, that the most he had to lift was a five-pound weight. Thus, the jury could have found the doctors' weight restrictions irrelevant to his job. The jury could also have credited testimony DMH was willing to give Bregier a "light duty job." The medical testimony on ability to work was sufficient to support the jury's verdict.

### DECISION

The trial court did not err in admitting evidence regarding matters on which Bregier himself had produced evidence. The reference to the settlement in closing argument was not prejudicial misconduct. The trial court did not err in instructing the jury or in framing the special verdict.

Affirmed.

---

1. The second special interrogatory reads: Between June 26, 1984, and today, October 17, 1986, what are the number of weeks, if

any, of "inability to work" directly caused by the injury incurred on November 27, 1982?