**In re the Arbitration Between**

**Lehanne THOMAS, Respondent,**

v.

**WESTERN NATIONAL INSURANCE GROUP, Appellant.**

**No. C0–95–1380.**

Court of Appeals of Minnesota.

Feb. 27, 1996.

Trent C. Jonas, Mark D. Streed, Meshbesher & Spence, Minneapolis, for respondent.

Paula Duggan Vraa, Arthur, Chapman, McDonough, Kettering & Smetak, P.A., Minneapolis, for appellant.

Considered and decided by DAVIES, P.J., and CRIPPEN and KALITOWSKI, JJ.

## OPINION

DAVIES, Judge.

Appellant Western National Insurance Group (Western) denied a claim for no-fault insurance benefits submitted by respondent Lehanne Thomas, alleging that there had been a one-year lapse in her disability. Such a lapse would end eligibility for benefits under a policy provision authorized by Minn.

Stat. § 65B.55, subd. 2 (1990). An arbitrator determined that Thomas was disabled, despite the one-year lapse in both her medical treatment and in benefit payments. This appeal followed the district court's refusal to vacate the arbitration award. We affirm.

## FACTS

On November 8, 1991, Thomas was injured in a two-vehicle collision. Thomas was covered by an automobile insurance policy issued by appellant Western. Following the collision, Thomas received medical treatment, ending in December 1991. Thomas sought further treatment in December 1992, one year and five days after her previous medical care. She stated that she waited until then to seek additional treatment because she hoped her accident-related injuries would heal on their own. Thomas graduated from high school and started college during the period when she did not seek treatment.

Western refused to pay for the medical treatments in December 1992 and thereafter, arguing that there had been a one-year lapse in Thomas's disability and that she was therefore not entitled to further no-fault benefits.

The Minnesota No–Fault Act allows an insurance company to include a policy provision terminating eligibility for no-fault benefits after a one-year lapse of disability and medical treatment. Minn.Stat. § 65B.55, subd. 2 (1994).[1] Thomas's insurance policy contained such a lapse provision. The parties agree there was a one-year lapse in Thomas's *treatment,* but they dispute whether there was a one-year lapse in her *disability.* The dispute arises from the conflicting definitions the parties' give the term "disability."

In February 1994, Thomas filed a petition for no-fault arbitration seeking payment of medical expenses incurred since December 1992. After a hearing in August 1994, the arbitrator found that, during the year of the alleged lapse in disability, Thomas had had a "reduced range of motion of her neck" and a "reduced activity level" as evidenced by her

difficulty in carrying trays of food while waitressing and her continuing problems with headaches, neck pain, sitting for long periods, looking down while studying, carrying books, driving her car, cleaning her home, and recreational activities such as volleyball. The arbitrator specifically noted that he had considered the fact that Thomas was still able to participate in all of the above-mentioned activities, but found that she performed these activities on a more limited basis than before the accident.

The arbitrator concluded that the legislature had not provided a definition of "disability" applicable to the lapse provision and that the term should be defined according to its "ordinary meaning," which he held to be "anything affecting the normal, physical or mental abilities of a person." *See Stone v. Allstate Ins.,* No. C0–94–414, 1994 WL 373386 at *1 (Minn.App. July 19, 1994) (quoting *The American Heritage Dictionary of the English Language* 528 (3 ed. 1992) (defining disability)), *review denied* (Minn. Sept. 28, 1994). Applying this definition of "disability," the arbitrator found that Thomas had a continuing disability. He awarded Thomas no-fault benefits in the amount of $2,932.90.

Western moved to vacate the award under Minn.Stat. § 572.19 (1994), arguing that the arbitrator exceeded his authority by misinterpreting the statutory term "disability." Western maintains that the term "disability" must be construed according to: (1) its meaning in Minn.Stat. § 65B.44, subd. 3 (1994), ("inability to work"); (2) its meaning in Minn.Stat. § 65B.51, subd. 3 (1994) (inability to engage in substantially all of one's usual activities); or (3) this court's ruling in *Chacos v. State Farm Mut. Auto. Ins.,* 368 N.W.2d 343 (Minn.App.1985), *review denied* (Minn. Aug. 19, 1985). The trial court denied Western's motion to vacate, concluding that the arbitrator had, by applying the dictionary meaning of the term "disability," properly awarded benefits.

---

1. The 1990 version of the statute, applicable at the time of the accident, is identical to the current version.

## ISSUE

Did the trial court err in upholding the arbitrator's definition of "disability" and refusing to vacate the award?

## ANALYSIS

■ A reviewing court is not bound by and need not give deference to a trial court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). The appropriate definition of a statutory term is a legal conclusion. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985). This court will review de novo the trial court's decision as to whether the arbitrator properly defined the term "disability." *See Johnson v. American Family Mut. Ins.,* 426 N.W.2d 419, 421 (Minn.1988) ("in the area of automobile reparation, arbitrators are limited to deciding issues of fact, leaving the interpretation of the law to the courts").

Western asserts that a statutory provision must not be read out of context but must be construed with other related provisions. *See, e.g., Kachman v. Blosberg,* 251 Minn. 224, 229–30, 87 N.W.2d 687, 692 (1958) (provision of highway traffic law should be construed with related statutory provisions). Western argues that, because the term "disability" has a specialized meaning in two other provisions of the No–Fault Act, it must also be construed as having a specialized meaning in the lapse provision.[2]

Yet if the legislature had wanted to restrict the ordinary meaning of "disability" in section 65B.55, as it did in sections 65B.44 and 65B.51, it could have specifically defined "disability" for section 65B.55 as well. It did not. *See Burns v. Alcala,* 420 U.S. 575, 580–81, 95 S.Ct. 1180, 1184, 43 L.Ed.2d 469 (1975) (words of statutes are generally given ordinary meaning when not specifically defined).

Western also asserts that this court previously defined the term "disability" as used in Minn.Stat. § 65B.55, subd. 2 (1984), in *Chacos v. State Farm Mut. Auto. Ins.,* 368 N.W.2d 343 (Minn.App.1985). But the appellant in *Chacos* was specifically seeking income loss benefits, and, therefore, the term "disability" was ultimately defined by the court only as it related to that appellant's inability to work under Minn.Stat. § 65B.44, subd. 3. *Id.* at 346–47. Therefore, the court did not find it necessary to decide the Minn. Stat. § 65B.55 lapse issue. *Id.* at 347. Accordingly, the definition of "disability" applied in *Chacos* does not control. Although *Chacos* addresses the issue of disability, it does not set forth a clear precedent on how to define disability under the lapse provision in Minn.Stat. § 65B.55.

■ Because the legislature did not provide a definition of "disability" applicable to lapse provisions authorized by Minn. Stat. § 65B.55, subd. 2 (1994), the term must be given its ordinary meaning. Here, the arbitrator properly applied the dictionary definition of the word. The arbitrator also properly found that Thomas's "reduced range of motion of her neck" and a "reduced activity level" resulting from her accident fit within that definition of "disability." The award of benefits was appropriate.

## DECISION

The arbitrator correctly interpreted the term "disability" in a no-fault insurance lapse provision according to its ordinary meaning and properly found that Thomas's injuries fit within that definition. The trial court properly refused to vacate the arbitration award to respondent for medical benefits.

**Affirmed.**

---

**2.** In the No–Fault Act's provision governing disability and income loss benefits, the phrase "inability to work" is defined as a "disability which prevents the injured person from engaging in any substantial gainful occupation or employment on a regular basis, for wage or profit * * *." Minn. Stat. § 65B.44, subd. 3 (1994). In the Act's tort threshold provision, the term "disability" is defined as "the inability to engage in substantially all of the injured person's usual and customary daily activities." Minn.Stat. § 65B.51, subd. 3(c)(1994). The Act makes neither definition more generally applicable.