**In re the Arbitration Between Lehanne THOMAS, Respondent,**

v.

**WESTERN NATIONAL INSURANCE GROUP, Petitioner, Appellant.**

No. C0–95–1380.

Supreme Court of Minnesota.

April 24, 1997.

Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Paula Duggan Vraa, Minneapolis, for appellant.

Meshbesher & Spence, Mark D. Streed, Anthony J. Nemo, Minneapolis, for respondent.

Schwebel, Goetz, Seiben & Moskal, P.A., Peter W. Riley, Lisa K. Morley, Minneapolis, amicus curiae.

### OPINION

TOMLJANOVICH, Justice.

This case raises the question as to how the term "disability" should be defined under the lapse provision of the Minnesota No–Fault Automobile Insurance Act. We affirm the court of appeals and hold that the arbitrator appropriately defined the term by its plain and ordinary meaning.

On November 8, 1991, Plaintiff Lehanne Thomas was injured in a car accident. She subsequently received medical treatment from December 3–16, 1991 for mild headaches and soreness in her neck, back, and shoulders, which was paid under the no-fault

coverage of her insurance policy with Western National Insurance Group ("Western"). It was not until December 21, 1992 that Thomas again received medical treatment for injuries allegedly stemming from the November 1991 car accident. Western denied Thomas' claims for no-fault benefits beginning December 21, 1992 because there had been a one-year lapse in medical treatment and disability since her last claim for benefits. Thomas subsequently brought her no-fault claim before an arbitrator.

Thomas claimed that although there was a one-year lapse in medical treatment, there was no such lapse in disability because her injuries from the November 1991 accident continued to affect her customary activities throughout that period. For instance, Thomas claimed that because of her injuries, she had difficulty studying for long periods at a time, carrying books, waiting tables, and driving for long periods of time.[1] Western argued that such difficulties are not sufficient to prevent a lapse in disability because they do not constitute a substantial interference with employment or customary activities. The arbitrator found that under section 65B.55, subd. 2, the term "disability" should be given its ordinary meaning of "anything affecting the normal, physical or mental abilities of a person." The arbitrator further found that Thomas suffered such a disability during the year of the alleged lapse and subsequently awarded benefits to Thomas. Both the trial court and the court of appeals affirmed the arbitrator's decision.

Western argues that the arbitrator defined the term "disability" too broadly and that it should instead be restricted to mean a substantial interference with employment or customary activities. Essentially, Western argues that the same requirements for proving a disability when claiming basic economic benefits should apply to the lapse provision. In the area of no-fault insurance, arbitrators are limited to deciding issues of fact, whereas consistency requires that the courts interpret the no-fault statutes. *Johnson v. American Family Mut. Ins. Co.*, 426 N.W.2d 419, 421 (Minn.1988).

The lapse provision of section 65B.55, subd. 2 is the provision at issue in this case and it provides in relevant part that "coverages may contain a provision terminating eligibility for benefits after a prescribed period of lapse of disability and medical treatment, which period shall not be less than one year." Minn.Stat. § 65B.55, subd. 2 (1996).

■ Western urges this court to define "disability" as used in the lapse provision by adopting a definition of that term provided in a different provision of the No–Fault Act, namely section 65B.51, subd. 3. That provision states that "[f]or the purposes of this subdivision disability means the inability to engage in substantially all of the injured person's usual and customary daily activities." Minn.Stat. § 65B.51, subd. 3 (1996). However, the language of that provision itself states that the definition of disability provided is confined to the purposes of that subdivision, which is to limit a claimant's ability to recover noneconomic damages in tort actions. Furthermore, the limitation on tort actions is a separate issue from whether basic economic benefits should be paid. Thus, the meaning of "disability" in the lapse provision is appropriately construed without consideration of the definition of the same term in section 65B.51, subd. 3(c).[2] Michael

---

1. Thomas also claimed that her telemarketing job was affected by her injuries and that she experienced difficulty in other regular activities such as cleaning, carrying things, playing sports, sleeping, driving, and dancing.

2. Western also argues that the definition of disability in section 65B.44, subd. 3 should apply to the same term in the lapse provision. However, that provision does not define the term "disability"; rather, it provides a definition for the term "inability to work." Furthermore, section 65B.44, subd. 3 provides for income loss benefits, which is only one of several basic economic

loss benefits to which an insured is entitled. Thus, the inability to work is applicable only to a claim for income loss benefits and should not be required to prevent a lapse in other basic economic benefits such as medical expenses.

Western cites *Chacos v. State Farm Mutual Auto. Ins. Co.*, 368 N.W.2d 343 (Minn.App.1985), for the proposition that the term "disability" in the lapse provision should be defined in accordance with the definition provided in section 65B.44, subd. 3. However, to the extent that *Chacos* supports such a proposition, *Chacos* is simply incorrect.

K. Steenson, *Minnesota No–Fault Automobile Insurance* 163 (2nd ed., Issue 6 1996).

 Consequently, we are left to interpret the meaning of the term "disability" in the lapse provision without any guidance from the legislature. When a statute does not define a word, it is ordinarily construed by its common usage. *Otis Lodge, Inc. v. Commissioner of Taxation,* 295 Minn. 80, 83, 206 N.W.2d 3, 6 (1972). If the legislature had intended to use the term in a technical manner in the lapse provision, it would have provided such a definition. By defining the term "disability" in section 65B.51, subd. 3 and failing to provide any such definition in the lapse provision, it can be presumed that the legislature intended the term "disability" in the lapse provision to be interpreted by its plain meaning. Consequently, the arbitrator did not err by defining the term "disability" as "anything affecting the normal physical and mental abilities of a person."

Western argues that the arbitrator's interpretation of the lapse provision in this case is improper for policy reasons because it would hold insurers liable for medical expenses that may not be incurred until many years after the accident. However, had the legislature intended to impose a time limit on medical expenses by enacting the lapse provision, it could have incorporated explicit language imposing such a limit, as is done in other states.[3] The absence of any such language leads us to conclude that the legislature instead did not intend to impose any such limit.

We hold that the term "disability" in the lapse provision of section 65B.55, subd. 2 is to be interpreted by its plain and ordinary meaning. We further hold that the arbitrator did not err by defining the term "disability" in the lapse provision as "anything affecting the normal physical and mental abilities of a person."

Affirmed.

STRINGER and ANDERSON, JJ., dissent.

STRINGER, Justice (dissenting).

I respectfully dissent.

While I agree with the majority that an ordinary definition of disability should be applied, I do not think the one selected by the arbitrator is "ordinary." When the issue is disability, the question must be asked—disabled from doing what? What can the individual not do that he or she could do before? *See* Webster's Third New International Dictionary 642 (1961) (defining disability as an "inability to do something."); Oxford American Dictionary 181 (1980) (defining disability as "something that disables or *disqualifies* a person, a physical *incapacity* caused by injury or disease etc.") (emphasis added); 42 U.S.C.A. §§ 423(d)(1)(A), 1382c(a)(3)(A) (1996) (defining disability under the federal Social Security Act as an inability *"to engage in any substantial gainful activity* by reason of any medically determinable physical or mental impairment * * *.") (emphasis added). Here all we know is that the plaintiff had trouble lifting trays when she was waitressing, was uncomfortable sitting for long periods of time while studying and had back pains—but where is the disability? It seems to me that when the legislature left to the courts the determination of "disability" in the context of the lapse provision, it must have meant something more than having discomfort while engaging in some activity. I would reverse the court of appeals, applying a definition of disability that requires proof of some form of physical or mental incapacity, notably absent here.

ANDERSON, J., joins in the dissent of Justice STRINGER.

---

**3.** States which impose such a time limit for medical expense coverage include Oregon, Arkansas, Delaware, South Dakota, Maryland, Massachusetts, South Carolina, Texas, Virginia, and Colorado. Irvin E. Schermer, *1 Automobile Liability Insurance* 3D, § 10.01(1) (1995).