**Arnold PRAX, Respondent,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.**

**No. 81–1098.**

Supreme Court of Minnesota.

Aug. 13, 1982.

TODD, Justice.

This appeal arises out of an action brought by respondent Arnold Prax against State Farm Mutual Automobile Insurance Company (State Farm) to recover income loss benefits under the Minnesota No-Fault Act. Cross-motions for summary judgment were heard in the Washington County District Court, and on August 18, 1981, the trial court entered summary judgment for Prax, holding State Farm liable for income loss benefits which had been withheld since September of 1980. We affirm.

The facts of this case are not in dispute. On October 6, 1979 Arnold Prax was injured while in the course of his employment at Chippewa Motor Freight Company in Rice Lake, Wisconsin.[1] At the time of the accident he was earning approximately $654 per week. Prax's personal automobile was insured by State Farm, which paid Prax $200 per week in income loss benefits from October 6, 1979 to September 23, 1980. On September 23, Prax obtained substitute employment and began to earn $230 per week. State Farm thereafter ceased paying income loss benefits to Prax, taking the position that Minn.Stat. § 65B.44, subd. 3 (1980) allows earnings from substitute employment to be deducted dollar for dollar from income loss benefits payable under the no-fault act. The issue on appeal is whether earnings from substitute employment must be deducted from income loss benefits payable under Minn.Stat. § 65B.44, subd. 3 (1980).

Minn.Stat. § 65B.44, subd. 3, the disability and income loss benefits provision of our no-fault act, provides that "income loss benefits shall provide compensation for 85 percent of the injured person's loss of present and future gross income from inability to work * * * subject to a maximum of $200 per week." Subdivision 3 also provides that "[c]ompensation under this subdivision shall be reduced by any income from substitute work actually performed by the injured

Stringer, Courtney & Rohleder and A. James Dickinson, St. Paul, for appellant.

Peterson, Bell & Converse, Willard L. Converse and Pamela J. Converse, St. Paul, for respondent.

---

1. Because Chippewa Motor Freight Company had over five commercial vehicles under common ownership, and the accident happened out of state, respondent's personal automobile insurance carrier (appellant, State Farm) is liable for no-fault benefits pursuant to Minn.Stat. § 65B.46, subd. 2 (1980).

person * * *." The trial court held that, when computing income loss benefits under § 65B.44, subd. 3, an injured person's substitute earnings should be subtracted from the claimant's weekly wage at the time of his or her injury to determine lost income, in this case $654–$230 × .85. This interpretation would of course allow respondent Prax to earn up to approximately $419 per week before any reduction in income loss benefits would be warranted. State Farm argues on appeal that the trial court ignored the plain meaning of the statute— that subdivision 3 clearly requires any substitute earnings to be subtracted, dollar for dollar, from income loss benefits to which the injured person would otherwise be entitled.

We conclude the trial court's interpretation of § 65B.44, subd. 3 was correct. The statutory language does not command the conclusion that substitute earnings must be subtracted directly from economic loss benefits. Instead, the statute purports to compensate an injured party for 85 percent of the person's "*loss of present and future gross income,*" subject of course to the $200 weekly maximum. Substitute earnings must be deducted from the injured party's weekly wage to determine actual *loss* of income. This treatment of substitute earnings is similar to that afforded by the Uniform Motor Vehicle Accident Reparation's Act (UMVARA). Under § 13 of the UMVARA, benefits payable for "work loss" are subject to a $200 weekly maximum. Section 1(a)(5)(ii) of the UMVARA defines "work loss" as

> loss of income from work the injured person would have performed if he had not been injured, * * * *reduced by any income from substitute work actually performed by him or by income he would have earned in available appropriate substitute work he was capable of performing but unreasonably failed to undertake.*

[emphasis added] Only under the trial court's method of computing income loss benefits will benefits provide compensation for 85 percent of the injured person's actual loss of present and future gross income.

The trial court cited *Record v. Metropolitan Transit Commission,* 284 N.W.2d 542 (Minn.1979) in support of its decision in the present case. The issue in *Record* concerned the proper method to be used in computing the amount of weekly income loss benefits an injured party was to receive under § 65B.44, subd. 3 when the claimant was also receiving worker's compensation disability benefits. At the time, Minn.Stat. § 65B.61, subd. 2 provided that "[b]enefits paid or payable under a worker's compensation law because of the injury or death shall be subtracted in computing basic economic loss benefits * * *." In *Record* we rejected the Metropolitan Transit Commission's argument that income loss benefits payable under the no-fault act were to be directly reduced by worker's compensation disability benefits. We held that worker's compensation benefits were to be subtracted from the insured's gross weekly wage when computing income loss benefits under § 65B.44, subd. 3 of the no-fault act.

In the present case State Farm cites to the fact that, in what was apparently a direct reaction to our decision in *Record,* the legislature has revised the coordination provision governing worker's compensation benefits and basic economic loss benefits. Minn.Stat. § 65B.61, subd. 2 (1980) now requires that income loss benefits under the no-fault act are to be reduced, dollar for dollar, by worker's compensation disability payments.[2] Of course, State Farm argues that the 1980 revision of § 65B.61 evidences the legislature's intent that substitute earnings, as well as worker's compensation benefits, are to be subtracted directly from no-fault economic loss benefits.

---

**2.** Minn.Stat. § 65B.61, subd. 2 (1980) now provides:

> If benefits are paid or payable under a workers' compensation law because of the injury, no disability income loss benefits are payable unless the weekly workers' compensation disability benefits are less than the weekly disability benefit as set out in section 65B.44, subdivision 3, in which case the reparation obligor shall pay * * * the amount that the weekly disability and income loss benefits payable under section 65B.44, subdivision 3, exceeds the weekly workers' compensation disability benefits.

We do not agree that the legislature's revision of § 65B.61, subd. 2 necessarily dictates a finding that, when computing economic loss benefits, substitute earnings are to be treated exactly as worker's compensation disability benefits. The legislative reaction to *Record* merely evidences the legislature's intent to coordinate economic loss benefits with *other insurance sources.* The statutory revision does not speak to the issue of substitute earnings.

The trial court's interpretation of 65B.44, subd. 3 is also consistent with the fact that an insurance premium has been paid by the injured party to insure against loss of income. If State Farm's interpretation of subdivision 3 was correct, Arnold Prax would continue to have a $424 weekly income loss ($654–$230), but would not be entitled to income loss benefits from his insurer. This court has previously sought to ensure "that policyholders receive the full benefit of their [insurance] contracts * * *." *Peterson v. Iowa Mutual Insurance Company,* 315 N.W.2d 601, 602 (Minn.1982) (holding injured may stack $200 weekly income loss benefits under two or more no-fault coverages on single priority level).

It is worth noting that, in the context of coordination of income loss benefits and worker's compensation disability benefits, while a reparation obligor may be relieved from paying income loss benefits under § 65B.44, subd. 3 when worker's compensation benefits are also being paid, section 65B.61, subd. 1 (1980) of the no-fault act requires the insurer to make "an appropriate rebate or reduction in the premiums of the plan of reparation security." One might assume that if the legislature intended income loss benefits to be reduced, dollar for dollar, by substitute earnings of an injured party, a similar premium rebate provision would also have been included. It was not.

Affirmed.