**Jeffrey R. DARBY, Appellant,**

v.

**AMERICAN FAMILY INSURANCE COMPANY, Respondent.**

No. C6–84–920.

Court of Appeals of Minnesota.

Oct. 30, 1984.

Reinhardt & Anderson, Timothy J. Leer, St. Paul, for appellant.

Albers and Associates, Linc S. Deter, Bloomington, for respondent.

Heard, considered and decided by FOLEY, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from a judgment denying appellant's claim for no-fault wage loss benefits after he was released to return to work on July 22, 1983. On February 2, 1984, the trial court granted respondent's summary judgment motion concluding the right to income loss benefits ended on July 22, 1983. We affirm.

## FACTS

On February 2, 1983, Appellant Jeffrey Darby was severely injured when he was struck by a snowplow attached to the front end of a truck. Darby was unemployed at the time of the accident but was scheduled to start work at Midland Glass Co. on February 3, one day after the accident. Darby's injuries prevented him from starting work.

Darby had been living at home with his father, who had three vehicles insured with respondent American Family Insurance Company. Under the terms of the policies, American Family paid income loss benefits from February 3, 1983, through July 22, 1983.

On July 22, 1983, an orthopaedic surgeon released Darby to return to work being of the opinion that he was capable of working. Upon contacting Midland Glass, Darby was informed there was no position available, Darby's position having been filled during his prolonged absence. No other positions were available. Darby searched for other work but has been unsuccessful.

He then made a claim for income loss benefits for the period of unemployment subsequent to July 22, 1983. American Family denied the claim, stating the right to income loss benefits existed only during the period of physical disability. The trial court agreed. Darby appeals.

## ISSUE

Are income loss benefits payable pursuant to Minn.Stat. § 65B.44, subd. 3 (1982) after an insured is medically released, without disability, to return to work available at time of disability, but not available at time of the insured's release.

## ANALYSIS

The Minnesota No-Fault Automobile Insurance Act provides:

Disability and income loss benefits shall provide compensation for 85 percent of the injured person's loss of present and future gross income from inability to work proximately caused by the nonfatal injury subject to a maximum of $200 per week.

\*       \*       \*       \*       \*       \*

For the purposes of this section "inability to work" means disability which prevents the injured person from engaging in any substantial gainful occupation or employment on a regular basis, for wage or profit, for which he is or may be training become reasonably qualified. If the injured person returns to his employment and is unable by reason of his injury to work continuously, compensation for lost income shall be reduced by

the income received while he is actually able to work.

Minn.Stat. § 65B.44, subd. 3 (1982).

American Family terminated income loss payments even though Darby's inability to work directly arose from the fact that his injuries had prevented him from entering employment available to him had he not been injured. Darby claims he would be working at Midland Glass today but for his injuries. The argument is appealing but doesn't stand the test of statutory interpretation.

In *Griebel v. Tri-State Insurance Co.,* 311 N.W.2d 156 (Minn.1981), the supreme court summarized the requirements of subdivision 3 as follows:

> It is clear from the record of Griebel's injuries that both injuries independently caused a disability that created an "inability to work" and *prevented the earning of income.*

*Id.* at 158 (emphasis added). The disability must prevent the earning of income. When Darby was released to return to work on July 22, 1983, he was capable of working. The unavailability of a job at Midland Glass did not constitute a disability which prevented him from "engaging in any substantial gainful occupation or employment on a regular basis * * *." Minn. Stat. § 65B.44, subd. 3 (1982).

Darby argues that had he found another job for less pay immediately after his release to work, he would have been entitled to certain benefits under the Minnesota No-Fault Act. Darby relies on *Prax v. State Farm Mutual Automobile Insurance Co.,* 322 N.W.2d 752 (Minn.1982). Prax was injured in October 1979 while in the course of employment. In September 1980, he obtained substitute employment earning substantially less than in 1979. The issue, therefore, was whether earnings from substitute employment must be deducted from income loss benefits.

The statutory language under scrutiny in *Prax* provided as follows:

> Compensation under this subdivision shall be reduced by any income from substitute work actually performed by the injured person or by income the injured person would have earned in available appropriate substitute work which he was capable of performing but unreasonably failed to undertake.

Minn.Stat. § 65B.44, subd. 3 (1980) (identical to 1982 provision). This provision deals with partial disabilities which prevent an insured from returning to work full-time or to the same type of work. Prax was disabled from his prior occupation but not from all work. *Prax* is distinguishable. In this case, Darby was certified as capable of returning to work on July 22, 1983, with no record of partial disability.

Darby also relies on *Nawrocki v. Hawkeye Security Insurance Co.,* 83 Mich.App. 135, 268 N.W.2d 317 (1978), which rested upon an interpretation of a Michigan no-fault statute closely paralleling an income loss standard proposed by the Minnesota Senate. The Senate defined "work loss" as:

> loss of income the injured person would have received from work he would have performed if he had not been injured * *.

1 Minn.S.Jour. 1503 (1973). Had this standard been adopted by the legislature, Darby's arguments would have merit. However, it was the House version which was ultimately adopted in the Minnesota No-Fault Act with only a few minor changes. That version clearly shows the legislative intent to limit income loss benefits to the period of disability.

### DECISION

Income loss benefits are not payable under the Minnesota No-Fault Act when an insured is medically released without disability to return to work but remains unemployed.

Affirmed.