**Marla A. LATZIG, Respondent,**

v.

**TRANSAMERICA INSURANCE COMPANY, Appellant.**

**No. C9–87–652.**

Court of Appeals of Minnesota.

Sept. 22, 1987.

W.B. Haas, Hutchinson, for respondent.

John E. Varpness, Gislason, Martin & Varpness, Edina, for appellant.

Considered and decided by POPOVICH, C.J., and NORTON and LOMMEN,* JJ., without oral argument.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a summary judgment determining a partially disabled insured eligible for no-fault income loss benefits. Appellant insurer claims the trial court erred because (1) respondent, as a matter of law, cannot meet the definition of "inability to work" and (2) genuine issues of material fact exist regarding respondent's reasonable qualifications for other work she could perform. We affirm.

## FACTS

The following facts are not in dispute. On July 21, 1984, respondent Marla Latzig injured her right shoulder in a single vehicle accident. Appellant Transamerica Insurance Company is the applicable no-fault insurance provider.

At the time respondent was injured, she worked full-time as a quality control inspector at Hutchinson Technology, earning approximately $5.50 per hour. Due to respondent's injury, she was unable to perform many of the necessary requirements of her employment and missed several days of work for which appellant paid her income loss benefits. In late October 1985, respondent was laid off.

Appellant paid respondent income loss benefits totalling $4643.60. Payments ceased on December 16, 1985, when appellant received a disability certificate from Dr. Robert Heeter which stated:

May return to work on: 12–10–85

Diagnosis: Bicipital tendinitis, right shoulder

Limitations, if any: Light duty work with limited use of the right arm, no

---

* Acting as judge of the court of appeals by ap-   pointment pursuant to Minn. Const. art. 6, § 2.

work above the shoulder level. This is a permanent restriction.

Although respondent was unable to return to Hutchinson Technology, she has worked at various jobs since December 16, 1985, including retail sales, bartendress, and production line work. Respondent testified the production line work, which began in July 1986, was only temporary. In September 1986, she left the production line work to begin a two-year paralegal program.

Respondent commenced this action to recover income loss benefits payable since December 16, 1985, pursuant to Minn.Stat. § 65B.44, subd. 3 (1986). In November 1986, this matter came before the court for a jury trial. At that time, the parties waived a jury trial and agreed to submit cross-motions for summary judgment.

On December 8, 1986, the court issued an order denying appellant's motion for summary judgment and granting respondent's motion in part. The court found respondent was eligible for income loss benefits as a matter of law. The court did not make a finding as to the specific amount of benefits because factual issues precluded that determination on summary judgment. Appellant then moved for reconsideration of the court's December order and respondent also moved for an adjudication of her claim for retraining benefits.

On February 6, 1987, the court denied both motions. In an extensive memorandum, the court interpreted Minn.Stat. § 65B.44, subd. 3, and analyzed applicable case law to support its conclusion respondent was entitled to income loss benefits as a matter of law. Factual issues prevented the trial court from summarily determining respondent was entitled to rehabilitation benefits.

Appellant then requested the court to find there is no just reason for delay and order a final judgment in the matter. The court so ordered and final judgment was entered February 13, 1987. This appeal followed.

## ISSUES

1. Did the trial court err in determining respondent was eligible for income loss benefits as a matter of law?

2. Did the trial court err in determining no genuine issues of material fact existed regarding respondent's eligibility for income loss benefits?

## ANALYSIS

1. In reviewing a summary judgment, this court must determine "(1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of law." *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

2. Minn.Stat. § 65B.44, subd. 3 (1986) provides in relevant part:

Disability and income loss benefits shall provide compensation for 85 percent of the injured person's loss of present and future gross income from inability to work proximately caused by the nonfatal injury subject to a maximum of $250 per week. Loss of income includes the costs incurred by a self-employed person to hire substitute employees to perform tasks which are necessary to maintain the income of the injured person, which are normally performed by the injured person, and which cannot be performed because of the injury.

\* \* \* \* \* \*

Compensation under this subdivision shall be reduced by any income from substitute work actually performed by the injured person or by income the injured person would have earned in available appropriate substitute work which the injured person was capable of performing but unreasonably failed to undertake.

For the purposes of this section "inability to work" means disability which prevents the injured person from engaging in any substantial gainful occupation or employment on a regular basis, for wage or profit, for which the injured person is or may by training become reasonably qualified. If the injured per-

son returns to employment and is unable by reason of the injury to work continuously, compensation for lost income shall be reduced by the income received while the injured person is actually able to work. The weekly maximums may not be prorated to arrive at a daily maximum, even if the injured person does not incur loss of income for a full week. *Id.*

Appellant claims because Dr. Heeter released respondent to do light duty work, she is capable of doing some type of work for which she is qualified. Appellant argues respondent's disability does not prevent her from engaging in *any* substantial gainful occupation and she therefore does not meet the definition of "inability to work."

The trial court rejected appellant's strict interpretation of "inability to work." The court reasoned appellant's interpretation would render the provision regarding substitute work meaningless. The court explained:

"[S]ubstitute work" is not defined in 65B.44, subd. 3, but a logical interpretation of the words indicates that it is work other than the job the individual held when injured, or work similar to the work held when injured.

To accept [appellant's] construction of "inability to work" would render the above section meaningless. There would be no "substitute work." Once an injured party was no longer totally disabled and could perform any type of work, eligibility for income loss benefits would end. This was clearly not the legislature's intention, and would create an absurd result. Total disability is not required to collect income loss benefits. Loss of income that is proximately caused by an accident is compensable, regardless of whether the disability is short term or sporadically recurring. Steenson, *A Primer on Minnesota No-Fault Automobile Insurance,* 7 Wm. Mitchell L.Rev. 313, 334 (1981).

The court supported its ruling by relying on *Prax v. State Farm Mutual Automobile Insurance Co.,* 322 N.W.2d 752 (Minn. 1982). In *Prax,* the Minnesota Supreme Court upheld the trial court's interpretation of paragraph 1 of 65B.44, subd. 3. *Id.* at 755. The trial court found Prax had been making $654 per week when injured. He then found substitute employment and earned $230 per week. The insurance company argued the income received from substitute work was deductible dollar for dollar from the then $200 weekly maximum. The trial court found that the income received from substitute work was to be subtracted from the wages Prax had been receiving when injured. This figure was multiplied by 85 percent, allowing Prax to earn up to $419 per week before any reduction in income benefits would be warranted.

The trial court in this case stated the *Prax* holding

adds further support to the conclusion that injury which prevents a return to the prior job is an injury that is compensable. The ability to perform *any* type of substitute work does not cause benefits to cease, as [appellant] asserts, but merely raises the question whether benefits should be reduced. The *Prax* decision provides a method to determine the amount of reduction.

[Respondent] is in a situation similar to Mr. Prax. There is no genuine issue of fact that she is partially disabled. Her disability prevents her from performing the work she performed when the injury occurred. Since December 16, 1985, when benefits were discontinued, she has performed various types of work within the physical limitations imposed by her disability. As in the *Prax* decision, this is "substitute work." The court indicated in its initial memorandum that the *amount* of income loss benefits which [respondent] is entitled to may have to be reduced by income she received from this substitute work. Whether any reduction is warranted and the amount of reduction are factual issues which must be presented to the trier of fact.

In further support of respondent's eligibility for income loss benefits, the trial court relied on *Chacos v. State Farm Mu-*

*tual Automobile Insurance Co.*, 368 N.W.2d 343 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Aug. 19, 1985). In *Chacos*, the insured was unable to continue his self-employed business due to a back injury received in a motor vehicle accident. One of the insured's grounds for appeal was that the trial court failed to give an instruction that an injured party is not required to seek employment outside of his community. *Id.* at 345. Finding the instruction was inapplicable to a no-fault case since it was derived from a worker's compensation case, the court, in distinguishing the two compensation systems, stated the following regarding no-fault:

> It is not the availability of work but the existence of a disability preventing work which determines the right to income loss benefits. Partially disabled people who are unable to work full time or return to the same type of work are "unable to work" within the meaning of the statute and are thus eligible for no-fault benefits.

*Id.* at 347; *see, e.g., Koller v. American Family Mutual Insurance Co.*, 366 N.W.2d 684, 685 (Minn.Ct.App.1985) (income loss benefits granted to an insured who could not return to his prior job as a truck driver due to injuries received in an auto accident).

The trial court interpreted *Chacos* stating:

> [Respondent] is unable to return to the type of work she performed when the injury took place. Under the *Chacos* holding she is eligible for benefits. These benefits may be reduced under the method approved by the supreme court in *Prax*. Genuine issues of fact prevent summary judgment on the *amount* of benefits which [respondent] is eligible for.

The trial court therefore concluded:

> [Respondent] is entitled to income loss benefits as a matter of law after December 16, 1985. This is consistent with the stated purposes of the No-Fault Act to relieve economic stress of uncompensated victims and to assume prompt payment to the victim of an automobile accident.

Appellant claims the trial court erred in its statutory interpretation and case law analysis. Appellant relies on *Darby v. American Family Insurance Co.*, 356 N.W.2d 838 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Feb. 19, 1985). In *Darby*, the insured sustained a severe injury and was to begin a job the day after his accident. Due to the injuries he sustained in the accident, however, he was prevented from starting work. Five and a half months later, when his doctor released him to return to work, Darby's employer advised him that his position was no longer available. Darby looked for other work but was unsuccessful. *Id.* at 839.

In response to Darby's argument that he would have been working had it not been for the injuries he sustained in the accident, this court stated:

> The disability must prevent the earning of income. When Darby was released to return to work on July 22, 1983, he was capable of working. *The unavailability of a job at Midland Glass did not constitute a disability which prevented him from "engaging in any substantial gainful occupation or employment on a regular basis * * *."* Minn.Stat. § 65B.44, subd. 3 (1982).

*Darby*, 356 N.W.2d at 840 (emphasis added).

In *Darby*, however, the insured was released with *no disability*. *Id.* at 839. Appellant argues this is not a distinguishing factor in this case because respondent's partial disability does not prevent her from returning to work full-time in a job for which she is qualified.

We disagree. In *Darby*, this court recognized Darby's lack of disability as a primary factor in denying his eligibility for income loss benefits. *Id.* at 840. After interpreting the no fault act, we concluded it was "the legislative intent to limit income loss benefits to the period of disability." *Id.* Appellant's reliance on *Darby* in this case is misplaced. We therefore affirm the trial court's determination respondent is eli-

gible for income loss benefits as a matter of law.

3. Appellant also argues the issue of whether respondent meets the definition of "inability to work" raises genuine issues of material fact and, therefore, precludes summary judgment. Appellant specifically claims material fact issues exist regarding respondent's qualifications for other types of work she is capable of performing within the constraints of her light duty restriction.

The trial court responded to this argument stating:

> [Appellant] argues that genuine issues of material fact exist which preclude a determination of eligibility. However, there is no dispute that on December 16, 1985, [respondent] was released to perform light duty work only. [Respondent] stated that she could not perform most of the duties that were required of her at Hutchinson Technology. In addition, [appellant] does not dispute that [respondent] has been unable to return to work at Hutchinson Technology or similar work. She has been able to perform work that does not require extensive use of her right arm. In light of uncontroverted evidence establishing these facts, under Minn.Stat. § 65B.44, Subd. 3, and cases which have interpreted it, [respondent] is entitled to summary judgment on the issue of eligibility.
>
> The questions of fact which [appellant] asserts exist are related to what other types of work [respondent] could have performed within the constraints of the light duty restriction after December 16, 1985. As the court indicated previously, these questions relate to what "substitute work" [respondent] has or could have performed, and may reduce the amount of benefits she is eligible for. This is precisely why the court previously found summary disposition of these issues to be improper.

We agree with the trial court. The uncontroverted facts establish respondent is eligible for income loss benefits as a matter of law. Factual issues regarding other work relate only to the amount of benefits, which the trial court properly refused to summarily determine.

## DECISION

The trial court did not err in making a determination respondent was eligible for income loss benefits as a matter of law. Similarly, the trial court properly found no material fact issues existed to preclude that determination on summary judgment.

Affirmed.