Rae Anne McKENZIE, Respondent,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.

No. C8-89-257.

Court of Appeals of Minnesota.

June 20, 1989.

James A. Stein, Hessian, McKasy & Soderberg, P.A., St. Paul, for appellant.

George G. Seltz, Mirviss, Seltz & Seltz, P.A., Minneapolis, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and NORTON and MULALLY,* JJ.

## OPINION

EDWARD D. MULALLY, Judge.

State Farm Mutual Automobile Insurance Company (State Farm) appeals that portion of the trial court's judgment awarding respondent Rae Anne McKenzie $6,475.42 in no-fault income loss benefits. The trial court determined that McKenzie's injuries, sustained as a result of an automobile accident, prevented her from working on a regular basis, thus entitling her to income loss benefits. We affirm.

## FACTS

Rae Anne McKenzie began work as a full-time legal secretary in 1970. She worked full time until 1972 when she gave birth to her only daughter. For the next two years she worked nearly full time as an office temporary employee, usually assigned to banks or law firms.

In 1975 she entered the University of Minnesota as a full-time student and consequently worked only part time as a legal secretary. Her hours varied, but she averaged about 20 hours per week from 1975 through February 1978. In the first week of February 1978 she began a three month leave of absence to concentrate on her studies. She had planned to return to her former position as a part-time legal secretary at the end of the three months and to continue as a full-time University student until mid or late 1979 when she would have graduated from the legal assistant program.

On February 25, 1978, McKenzie was injured while riding as a passenger in a motor vehicle. As a result of the accident, McKenzie was temporarily totally disabled and unable to work or attend school until June 1978. In June 1978 she returned to work half time and continued that work until September 1978 when she returned to school full time. She attended school full time from September through December 1978, and did not work.

McKenzie discontinued her schooling in 1979 and worked part time, sporadically. From 1980 through 1987, McKenzie worked intermittently at various legal secretary and legal assistant jobs, usually on a freelance basis and always less than full time. McKenzie finally returned to school in 1984, enrolled part time, until graduating from the legal assistant program in 1986.

According to medical reports, the 1978 accident left McKenzie permanently partially disabled in her neck and back (10%), her right foot and ankle (20%) (only half of which is attributable to the 1978 accident), and her left lower extremity (5%). McKenzie testified that she cannot work full time because she suffers from a sore back, sore neck, headaches and a sore, swollen ankle. She testified that she has been offered full-time employment but had to turn it down because of her physical disability.

After the accident, McKenzie sought income loss and medical expense benefits from State Farm, who was assigned this case because of its status as a servicing carrier for the Minnesota Automobile Assigned Claims Bureau. State Farm made periodic payments for income loss, totalling $3,524.58, before discontinuing payments. McKenzie then commenced this action for

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

both income loss and medical expense benefits.

She claimed she was entitled to approximately $6,500 in income loss benefits, which represented the balance of the $10,000 income loss maximum limit, *see* Minn. Stat. § 65B.44, subd. 1(b) (1976), less the income loss benefits she had already received. She claimed that had it not been for the accident, she could have worked full time rather than half time from mid or late 1979 through 1987; therefore, she claimed she suffered well in excess of $6,500 in income loss resulting from the accident which rendered her unable to work full time.

After considering McKenzie's deposition testimony and the parties' memoranda, the trial court issued its amended order for judgment and attached memorandum awarding McKenzie all her claimed medical loss benefits and $6,475.42 in income loss benefits. No findings were included; however, in its memorandum the trial court stated:

It is undisputed that plaintiff Rae Anne McKenzie sustained *permanent* injuries as a result of an automobile accident in February of 1978. As a further result of this accident, McKenzie is unable to work on a regular basis due to the injury sustained.

(Emphasis in original.) The trial court further stated that "the accident hampered [McKenzie's] schooling, but she finally earned her degree * * * in June 1986." The trial court concluded:

Based upon the information in the court file, McKenzie has shown that she is disabled, "unable to work" within the meaning of the terms of the statute, and she therefore is entitled to recover unpaid no-fault income loss benefits.

On appeal from the judgment, State Farm does not challenge the award of medical expense benefits, limiting its claim of error to the trial court's award of income loss benefits.

## ISSUE

Did the trial court err in awarding no-fault income loss benefits based on an implicit determination that, but for the accident, the claimant would have earned more income than she had been earning prior to the accident?

## ANALYSIS

■  Minn.Stat. § 65B.44, subd. 3 (1986) provides in pertinent part:

Disability and income loss benefits shall provide compensation for 85 percent of the injured person's loss of present and future gross income from *inability to work* proximately caused by the nonfatal injury * * *.

\*      \*      \*      \*      \*      \*

For the purposes of this section *"inability to work"* means *disability* which prevents the injured person from engaging in any substantial gainful occupation or employment on a regular basis, * * *. If the injured person returns to employment and is unable by reason of the injury to work continuously, compensation for lost income shall be reduced by the income received while the injured person is actually able to work.

(Emphasis added.)

McKenzie suffered from an "inability to work" between 1979 and 1987, the years for which she claims income loss: she had a "disability," as evidenced by her medical records; and, although the disability did not prevent her from engaging in *any* substantial gainful occupation, it did prevent her from working continuously.

The pivotal question before this court is whether McKenzie's inability to work resulted in any income loss. McKenzie argues she suffered income loss because she would have eventually worked full time and earned correspondingly more income had it not been for the accident. State Farm claims that because she was working part time prior to the accident, she did not suffer any income loss because she was able to work the same amount of time at the same type of job after the accident. This precise issue of whether a court may award income loss benefits based on an anticipated, higher income than what the

claimant made prior to the accident is an issue of first impression in Minnesota.

Although no Minnesota court has dealt with the issue of an anticipated change in employment circumstances, which would have occurred but for an accident, Professor Steenson discusses the issue in his book, *Minnesota No–Fault Insurance*. M. Steenson, *Minnesota No–Fault Insurance*, 44–55 (1982). Specifically, he addresses four possible scenarios where circumstances could have changed, and a different income would have been earned, had an accident not occurred. *Id.* at 53. One such scenario involves a claimant who is unemployed at the time of the accident, but would have subsequently obtained employment but for the accident. We find this scenario applicable here where McKenzie held a part-time position prior to the accident but claims she would have obtained full-time work and earned more income a year and a half after the accident. Professor Steenson addresses this scenario, stating:

> Although loss of earning capacity is not compensable, because it compensates for loss of wages that a person *could* rather than *would* have earned, if the injured person can demonstrate that at an appropriate period of time employment would have been obtained but for the injury, disability and income loss benefits should be payable. *The problem is in separating the speculative from the probable.*

*Id.* at 53–54 (emphasis added).

We agree that McKenzie can recover only income she *would* have earned and not what she merely *could* have earned. We also agree that the appropriate way to distinguish what she would have earned from what she could have earned is to determine whether the chances of her working full time after the accident were probable or merely speculative.

■ The question of whether a claimant would, as opposed to could, have obtained full-time employment is generally one for the trier of fact. *See Demning v. Grain Dealers Mutual Insurance*, 411 N.W.2d 571, 573 (Minn.Ct.App.1987) (holding that whether or not claimant would have returned to work at all was a question of fact). We believe this question should be taken from the fact-finder and decided as a matter of law only in those cases where the chances that the claimant would have obtained work (or worked more hours) but for the accident are merely speculative.

■ Such is not the case here; McKenzie's assertion she *would* have worked full time but for the accident is more than speculation. Contrary to State Farm's claims, McKenzie had a "track record" of full-time employment in the past: she worked full time for three years prior to her daughter's birth; even after her daughter was born, McKenzie worked nearly full time; and although McKenzie cut back to part-time work when she entered college, she was still spending more than 40 hours a week on career pursuits. In addition, she was in fact offered full-time work after the accident which she said she declined because of her disability.

Because McKenzie established the chances of her working full time were more than speculative, the question of whether she would have worked full time was properly considered by the trial court in its factfinding capacity. The trial court's finding that McKenzie would have worked full time and earned greater income but for the accident is not clearly erroneous and will not be upset on appeal.[1] Minn.R.Civ.P. 52.01. As pointed out, there was substantial evidence of McKenzie's past full-time employment from which the trial court could reasonably infer she would have returned to full-time work after her anticipated graduation in 1979.

We have considered the parties' arguments in which they cite the Uniform Motor Vehicles Accident Reparation Act (UMVARA) and this court's decisions in *Latzig v. Transamerica Insurance Co.*, 412 N.W.

---

1. Although the trial court specifically stated the accident rendered McKenzie "unable to work on a regular basis," we find that in the context of the trial court's order and memorandum this statement is tantamount to a finding that McKenzie would have eventually returned to full-time work had she not been injured.

2d 329 (Minn.Ct.App.1987), and *Darby v. American Family Insurance Co.*, 356 N.W.2d 838 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Feb. 19, 1985). Although we find these authorities helpful, they are not directly applicable here. The UMVARA is not controlling because it employs the concept of "work loss" which differs somewhat from the Minnesota no-fault concepts of "loss of income" and "inability to work." *Compare* Unif. Motor Vehicles Accident Reparation Act § 1, 14 U.L. A. 48, 50 (1972) *with* Minn.Stat. § 65B.44, subd. 3. *Latzig* and *Darby* are not controlling because they address the issue of whether income loss was caused by a disability or by the unavailability of work (regardless of the disability); they do not address the pertinent issue here of whether the claimant's income level would have risen but for the accident and resulting disability.

McKenzie claims the trial court erred in failing to award her 15% interest on the overdue income loss and medical benefits payments pursuant to Minn.Stat. § 65B.54, subd. 2 (1986). This claim is barred from our review because McKenzie did not file a notice of review pursuant to Minn.R.Civ. App.P. 106. *See Northern State Bank of Thief River Falls v. Efteland*, 409 N.W.2d 541, 544 (Minn.Ct.App.1987) (citing *Ford v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 294 N.W.2d 844 (Minn.1980)).

## DECISION

The trial court's award of income loss benefits to McKenzie is affirmed. We do not address the issue of whether the trial court erred in not awarding McKenzie interest on overdue payments.

Affirmed.