**Linda ERICKSON, Appellant,**

v.

**GREAT AMERICAN INSURANCE COMPANIES, Respondent.**

**No. C3–90–1841.**

Court of Appeals of Minnesota.

March 5, 1991.

Sharon L. Van Dyck, Schwebel, Goetz and Sieben, P.A., Minneapolis, for appellant.

Robert H. Peterson, Bloomington, for respondent.

Considered and decided by NORTON, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

NORTON, Judge.

Appellant Linda Erickson sought arbitration of her claim for wage loss benefits under the No–Fault Act. The arbitrator awarded Erickson $2,034.94. Respondent Great American Insurance Companies moved to vacate the award in district court. The trial court granted Great American's motion to vacate and Erickson has appealed.

## FACTS

Erickson was injured in an automobile accident on May 3, 1986. At the time of the accident, Erickson was working at two jobs. She worked 22 hours a week for 20 weeks of the year as a clerk at Canterbury Downs. During the peak season at the track, July 9 to September 1, she worked 28 hours per week at the track. Her hourly wage at Canterbury Downs was $9.25 per hour. Erickson earned $203.50 for a 22 hour week and $259.00 for a 28 hour week.

In addition to her job at Canterbury Downs, Erickson worked as a house cleaner, earning $55 per week. She worked cleaning houses the entire time she was employed at Canterbury Downs. Thus, Erickson's total income was $258.50 when she worked a 22–hour week at Canterbury Downs and $314.00 when she worked a 28–hour week at Canterbury Downs. As a result of the accident, Erickson is no longer able to work as a house cleaner.

On August 26, 1986, Erickson began working full time at ACRO–Minnesota, Inc., where she earns $277.20 per week.

At the time of the accident, Erickson was a passenger in a vehicle owned and driven by Cheryl Nordstrom. Respondent Great American insured the Nordstrom vehicle. Erickson sought income loss benefits, which Great American initially paid. How-

ever, Great American refused to pay income loss benefits after August 31, 1986.

Erickson demanded arbitration pursuant to Minn.Stat. § 65B.525 (1988). At the arbitration hearing, Erickson testified that her job at ACRO–Minnesota was intended to replace only her job at Canterbury Downs. She testified she would have continued cleaning houses but for the accident. The arbitrator found Erickson would have continued her job cleaning houses but for the accident and awarded her $2,034.94 in income loss benefits. Great American moved to vacate the award in the district court, contending the arbitrator's award was based upon an erroneous view of the law. The trial court granted Great American's motion and vacated the award. Erickson has appealed.

### ISSUE

Did the trial court err in vacating the arbitrator's award?

### ANALYSIS

■ The No–Fault Act provides for mandatory binding arbitration of any claim for no-fault benefits where the claim at the commencement of arbitration is under $5,000. Minn.Stat. § 65B.525, subd. 1. The arbitrator's factual determinations are final. Legal determinations, however, are beyond the scope of an arbitrator's authority. As the Minnesota Supreme Court has noted:

We think that consistency mandates that the courts interpret the no-fault statutes, not various panels of arbitrators. Therefore, we hold that in the area of automobile reparation, arbitrators are limited to deciding issues of fact, leaving the interpretation of the law to the courts.

*Johnson v. American Family Mut. Ins.,* 426 N.W.2d 419, 421 (Minn.1988).

■ There is a strong policy in Minnesota favoring the finality of arbitration, and the grounds for vacating an arbitrator's award are narrow. *See Kersting v. Royal–Milbank Ins.,* 456 N.W.2d 270, 274 (Minn. App.1990). Here, the parties agree that determining the proper method of calculating Erickson's income loss benefits is a

legal issue which the trial court could properly decide.

By awarding income loss benefits in the present case, the arbitrator implicitly determined that Erickson would have continued with her housekeeping job but for the accident. Great American does not contend otherwise. Based on this factual determination, the arbitrator made a legal determination that Erickson was entitled to recover income loss benefits. It is this legal determination which is before the court for de novo review. *See Johnson,* 426 N.W.2d at 421.

■ The No–Fault Act provides:
Basic economic loss benefits shall provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle * * *. Disability and income loss benefits shall provide compensation for 85 percent of the injured person's loss of present and future gross income from inability to work proximately caused by the nonfatal injury subject to a maximum of $250 per week. * * *

Compensation under this subdivision shall be reduced by *any income from substitute work* actually performed by the injured person or by income the injured person would have earned in available appropriate substitute work which the injured person was capable of performing but unreasonably failed to undertake.

Minn.Stat. § 65B.44, subds. 1, 3 (1988) (emphasis added). An insured's ability to perform substitute work does not bar recovery of income loss benefits, but it will reduce the amount of such benefits. *Latzig v. Transamerica Ins. Co.,* 412 N.W.2d 329, 333 (Minn.App.1987); *see also Prax v. State Farm Mut. Auto. Ins. Co.,* 322 N.W.2d 752, 754 (Minn.1982); 1 M. Steenson, *Minnesota No–Fault Automobile Insurance* 81 (1989).

*Prax* provides the formula for computing income loss benefits when the claimant is performing substitute work. Under the *Prax* formula, the claimant's substitute earnings are to be subtracted from the

claimant's weekly wage loss at the time of the injury. *Prax*, 322 N.W.2d at 754.

Erickson contends the *Prax* decision should be limited to those situations in which the insured held a single job prior to the accident, and a single job after the accident as substitute employment. We disagree. The *Prax* court was faced with a claim by the insurer that the statute required subtraction of substitute earnings *from economic loss benefits.* In rejecting this argument, the court stated:

> [T]he statute purports to compensate an injured party for 85 percent of the person's *"loss of present and future gross income,"* * * *. Substitute earnings must be deducted from the injured party's weekly wage to determine actual *loss* of income.

*Id.* (emphasis in original). The *Prax* analysis applies whenever substitute work is involved to determine loss of income.[1]

■ Recovery under the income loss provisions of the No–Fault Act is limited to income actually lost. *See Rindahl v. National Farmers Union Ins. Cos.,* 373 N.W.2d 294, 299 (Minn.1985); *Darby v. American Family Ins. Co.,* 356 N.W.2d 838, 840 (Minn.App.1984), *pet. for rev. denied* (Minn. Feb. 19, 1985). A recovery of income loss benefits is not limited to the income the claimant was making at the time of the injury. *See McKenzie v. State Farm Mut. Auto. Ins. Co.,* 441 N.W.2d 832, 835 (Minn.App.1989) (student may recover for loss of anticipated higher income she would have received but for the accident); *State Farm Mut. Auto. Ins. Co. v. Chastain,* 167 Ga.App. 822, 823, 307 S.E.2d 717, 718 (1983) (loss of opportunity to work overtime compensable).

The twist in the present case is that Erickson is not seeking to recover income loss benefits based on a foregone opportunity to work at a higher income. Erickson *is* working at a higher income.

The No–Fault Act defines "loss" as "economic detriment resulting from the accident causing the injury." Minn.Stat. § 65B.43, subd. 7 (1988). The substitute-work provision of section 65B.44, subd. 3 reflects the legislature's intent to limit payment of income loss benefits to the amount of money necessary to bring the insured's post-accident gross income up to 85% of the insured's pre-accident gross income.

■ We believe this showing of legislative intent precludes recovery by Erickson. Her post-accident gross income is greater than her pre-accident gross income, except for the seven-week peak season. Erickson has been fully compensated for her peak-season income loss.

Erickson asserts the trial court erred in looking only to her pre-accident and post-accident gross income figures. The arbitrator found Erickson would have continued her housecleaning but for the accident, and Erickson contends she should be compensated for the $55 per week she would have made but for the accident.

The No–Fault Act does not make express provisions for a person in Erickson's situation. We cannot create such a provision. Instead, we must apply the statute as it is written.

Erickson has moved to strike portions of Great American's brief concerning statements made by two physicians regarding Erickson's ability to resume her day-to-day activities. The statements do not relate to the issue on appeal, and therefore, the motion to strike is denied as unnecessary.

---

1. The trial court applied *Prax* as follows:

| Weekly wage at time of injury | Substitute earnings | Eighty-five percent | Loss |
|---|---|---|---|
| 28 hr. week $314.00 | − $277.20 | × .85 | $31.28 |
| 22 hr. week $258.50 | − $277.20 | × .85 | –0– |

In 1986, Erickson lost one 28 hour week, or $31.28. In 1987, Erickson lost seven 28 hour weeks, or $218.96. Her total wage loss was $250.24. The arbitrator's award covered the period from August 25, 1986 to May 13, 1988.

Thus, for 1988, Erickson did not suffer wage loss covered by the arbitrator's award. The trial court set off the $1,341.99 Great American had paid and concluded Erickson was not entitled to any recovery.

## DECISION

Erickson, having suffered no economic detriment measurable in her gross income, is not entitled to additional income loss benefits.

Affirmed.