METROPOLITAN PROPERTY AND
CASUALTY INSURANCE CO.,
Respondent,

v.

METROPOLITAN TRANSIT
COMMISSION,
Appellant.

No. C3-94-1606.

Supreme Court of Minnesota.

Oct. 20, 1995.

Bryan J. Leary, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for appellant.

Karen Mellingvan Vliet, Elizabeth Truesdell Smith, Arthur, Chapman, McDonough, Kettering & Smetak, P.A., Minneapolis, for respondent.

## OPINION

KEITH, Chief Justice.

Appellant, Metropolitan Transit Commission ("MTC"), and respondent, Metropolitan Property & Casualty Insurance Co. ("Metropolitan"), ask this court to determine the date of accrual of a no-fault insurer's right of indemnity under the Minnesota No–Fault Automobile Insurance Act, Minn.Stat. § 65B.41–.71 (1992). MTC appeals from a court of appeals decision holding that a no-fault insurer's right of indemnity under Minn.Stat. § 65B.53, subd. 1 (1992) accrues when the insurer actually pays on its insured's claim. Because we believe that the legislature did not clearly intend to amend the common law rules for the accrual of indemnity with the enactment of Minn.Stat. § 65B.53, subd. 1 (1992), we affirm.

On May 28, 1987, Kathleen Evans, Metropolitan's insured, was struck and seriously injured by an MTC bus as she entered a crosswalk at an intersection in downtown Minneapolis. Evans reported the accident to Metropolitan by telephone on June 12, 1987, and on June 17, 1987, Metropolitan established a wage loss and medical expense reserve to cover Evans' potential losses. Evans returned an Application for No–Fault Benefits to Metropolitan on June 26, 1987, which detailed her injuries, medical expenses to date, and average weekly wages. Metropolitan corroborated Evans' wage claims and continuing disability with her employer and her physician on July 16 and July 20, 1987, and issued the first wage loss payment to Evans on July 23, 1987. Metropolitan received the first medical bill resulting from Evans' accident on August 3, 1987, and sent its first medical expense payment on August 17, 1987. Metropolitan continued to pay Evans for lost wages and medical expenses until April 30, 1993, when Evans agreed to accept a final payment of $10,000 in settlement of any future claims. The amount paid to Evans by Metropolitan over this nearly 6–year period, including the $10,000 settlement, totaled $53,270.76.

On or about June 3, 1993, Metropolitan notified MTC of the amount of its payments to Evans, stating that it expected to be indemnified by MTC. MTC responded on June 7, 1993 by refusing Metropolitan's claim under a statute of limitations defense. Asserting that the statute of limitations on its indemnity claim had not expired, Metropolitan filed on July 13, 1993 for no-fault arbitration pursuant to the Minnesota No–Fault Automobile Insurance Act, Minn.Stat. § 65B.53 (1992). MTC refused to arbitrate Metropolitan's claim; accordingly, Metropolitan commenced this declaratory judgment action by service of a Summons and Complaint on July 16, 1993.

Metropolitan filed its claim in Hennepin County District Court on November 2, 1993, and both sides moved for summary judgment. The trial court granted Metropolitan's summary judgment motion on May 2, 1994, holding that *no* statute of limitations governs the assertion of an indemnity claim under section 65B.53, subd. 1. In the alternative, the trial court ruled that if a statute of limitations did apply to Metropolitan's statutorily-created right of indemnity, that right accrued *either* on the date of Metropolitan's first demand for indemnity (July 13, 1993), *or* on the date of the final payment to Evans (April 30, 1993). In either case, Metropolitan's claim was timely under the 6–year statute of limitations for liabilities created by statute. Minn.Stat. § 541.05, subd. 1(2) (1994). MTC appealed from the trial court's summary judgment in favor of Metropolitan, arguing that a statute of limitations did apply, and that the trial court's ruling on the accrual dates for a 6–year limitations period was incorrect. The court of appeals determined that while the 6–year statute of limitations controlled Metropolitan's indemnity claim, that claim accrued on the date of Metropolitan's first payment to Evans (July 23, 1987), within six years of the start of its action against MTC. Neither party disputes the application of a 6–year statute of limitations to Metropolitan's action. Therefore, the only remaining issue is when Metropolitan's right of indemnity accrued.

 This issue turns on the interpretation of Minn.Stat. § 65B.53, subd. 1 (1992), which creates a right of indemnity for a "reparation obligor paying or obligated to pay basic or optional economic loss benefits."

The construction or interpretation of a statute is a question of law and is reviewed without deference to the lower courts. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). Because the parties in this case have stipulated to the relevant facts, in reviewing the trial court's summary judgment this court need only ask whether that court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

The Minnesota No–Fault Automobile Insurance Act, Minn.Stat. § 65B.41–.71 (1992), provides for a limited right of recovery between reparation obligors. *See* 2 Michael K. Steenson, *Minnesota No–Fault Automobile Insurance* 303–06 (2nd ed. 1994). At the time of the initiation of this action, the Act granted a right of indemnity to an insurer who pays no-fault benefits to a claimant injured through the negligent operation, maintenance or use of a commercial vehicle, including a public bus. Minn.Stat. §§ 65B.53, subd. 1, 65B.43, subd. 12 (1992).[1] This statutory right of indemnity, enforceable through mandatory arbitration, is set forth in section 65B.53, subd. 1.[2]

Under the common law, the right of indemnity does not accrue until the liability of the party seeking indemnity "has become finally fixed and ascertained, or until after the claimant has settled or has paid the judgment or more than a commensurate share of it." 54 C.J.S. *Limitation of Actions* § 207 (1987). In other words, an indemnity claim by an insurer accrues when "the party seeking indemnification has made payment to the injured person." *Id.* Minnesota courts have adopted this common law rule in the insurance context in several cases. *See Grothe v. Shaffer*, 305 Minn. 17, 23–24, 232

N.W.2d 227, 232 (1975); *Christy v. Menasha Corp.*, 297 Minn. 334, 338–39, 211 N.W.2d 773, 776–77 (1973) (right of indemnity against loss or damage arises when "payment has been made or loss or damage has otherwise occurred"); *Blomgren v. Marshall Management Services*, 483 N.W.2d 504, 506–07 (Minn.App.1992). Thus, if Metropolitan's claim for indemnity was governed solely by the common law, rather than the No–Fault Automobile Insurance Act, the date of accrual clearly would be the date of Metropolitan's first payment to Evans, which would allow recovery of the entire amount since all payments fell within the 6–year limitations period.

The No–Fault Act complicates the issue by restricting Metropolitan's indemnity rights to those provided by section 65B.53, subd. 1. As this court stated in *American Family Mut. Ins. Co. v. Vanman*, the Act has replaced the no-fault insurer's common law rights to subrogation and indemnity with very limited statutory rights. 453 N.W.2d 48, 49–50 (Minn.1990). As noted above, *only* those insurers who are responsible for payments to a claimant injured through the negligent operation of a commercial vehicle can seek indemnity from the commercial vehicle's insurer. Metropolitan's claim falls within this provision.

MTC asserts that because the legislature supplanted the common law right of indemnity with section 65B.53, subd. 1, this court should look to the language of the statute alone in its determination of the issue. MTC believes that an insurer's right to indemnity accrues when the insurer is "paying or obligated to pay" for a claimant's economic losses. Minn.Stat. § 65B.53, subd. 1. MTC claims this language designates two alterna-

---

1. Section 65B.53, subd. 1 was amended in 1993 to exclude buses in comparable situations from the indemnity provisions of the Act. *See* Act effective Aug. 1, 1993, ch. 362, § 1, 1993 Minn. Laws 2543, *codified at* Minn.Stat. § 65B.53, subd. 1 (1994). The parties agree, however, that the MTC bus in question here was a "commercial vehicle" covered by section 65B.53, subd. 1 at the time of the accident.

2. Minn.Stat. § 65B.53, subd. 1 (1992) provides:
 A reparation obligor paying or obligated to pay basic or optional economic loss benefits is enti-

tled to indemnity subject to the limits of the applicable residual liability coverage from a reparation obligor providing residual liability coverage on a commercial vehicle of more than 5,500 pounds curb weight if negligence in the operation, maintenance or use of the commercial vehicle was the direct and proximate cause of the injury for which the basic economic loss benefits were paid or payable to the extent that the insured would have been liable for damages but for the deduction provisions of section 65B.51, subdivision 1.

tive dates for accrual: *either* when the insurer actually pays on a claim, *or* when the insurer becomes "obligated to pay." Under this interpretation, an insurer's right accrues not when payments occur, but when the legal obligation to pay first arises, if a payment is not made concurrently. MTC contends that this reading of the statute would prevent an insurer from delaying the commencement of the statute of limitations by delaying payment to the claimant.

■■■ Under Minnesota law, a no-fault insurer becomes obligated to pay its insured for economic losses arising from a motor vehicle accident when it receives "reasonable proof of the fact and amount of loss realized." Minn.Stat. § 65B.54, subd. 1 (1994). As an insured party incurs economic losses as a result of the accident, the insured must provide proof of loss to the no-fault insurer. *Id.* Mere notice of an accident, however, is not "reasonable proof" under the statute. *La-Valley v. National Family Ins. Corp.*, 517 N.W.2d 602, 605 (Minn.App.1994), *pet. for rev. denied* (Minn., Aug. 24, 1994). The insured must present "reasonable notice of a possible claim of right" to the reparation obligor before he or she can receive no-fault benefits. *Haagenson v. National Farmers Union Property and Casualty Co.*, 277 N.W.2d 648, 653 (Minn.1979).

Accordingly, MTC believes that Metropolitan became obligated to pay Evans' claim, and thus triggered its indemnity rights, when Evans presented her insurer with reasonable notice of her possible claim. The facts reveal that Evans notified Metropolitan of the May 28, 1987 accident by telephone on June 12, 1987 and in writing on June 26, 1987. Metropolitan verified her claims for lost wages and medical bills after it received her no-fault benefits application, and sent Evans her first payment on July 23, 1987. Although the parties did not stipulate to exactly when Metropolitan's obligation to pay Evans arose, MTC argues that Evans' written application for no-fault benefits constituted reasonable notice of a possible claim of right as a matter of law, and therefore Metropolitan's right of indemnity lapsed before it initiated its arbitration action on July 13, 1993. The fact that Metropolitan chose to verify and corroborate

the information on the application by contacting Evans' employers is irrelevant, asserts MTC, and did not delay the accrual of its obligation until the date of the first payment.

In response to MTC's argument, Metropolitan requests that this court apply common law rules to the accrual of its right of indemnity. Metropolitan asserts that its claim against MTC accrued on the date of its first payment to Evans, July 23, 1987, and that a ruling in its favor would comport with prior decisions by this court, public policy concerns and the purposes of the No–Fault Act. Metropolitan agrees with MTC that the Act itself does not address this issue directly, and therefore it sees no reason to speculate on the legislature's intent. We concur, and hold that Metropolitan's claim for indemnity was timely under common law principles which have not been supplanted by the "paying or obligated to pay" language of the statute. Accordingly, we do not reach the issue of whether Evans' written application for benefits of June 26, 1987 constituted "reasonable notice" of the validity of Evans' claim so as to create an obligation to pay under the Act.

■■■ We also believe that following the common law date of payment rule would support the underlying purposes of the No–Fault Act by assuring the proper allocation of losses between insurers. Delaying accrual of the indemnity claim of a no-fault insurer until the date of payment will not increase the financial exposure of the insurer of the commercial vehicle, and will encourage proper allocation of losses by allowing the no-fault insurer to determine the extent of actual losses before seeking indemnity. It would be commercially unreasonable and impractical to require insurers to begin arbitration proceedings under section 65B.53, subd. 1 simply upon the receipt of an application for benefits. *See E.S.P., Inc. v. Midway Nat'l Bank,* 447 N.W.2d 882, 886 (Minn.1989) (requiring banks to commence action for indemnity merely upon receipt of affidavit of forgery, before financial loss is confirmed, would be unduly burdensome).

■■■ In response to MTC's fears that a date of payment rule would allow no-fault insurers to delay the accrual of their indem-

nity rights by delaying payment to their insureds, we note that no-fault insurers are penalized by the Act if they fail to promptly reimburse their policyholders. Minn.Stat. § 65B.54, subd. 1 (1994) provides:

> Basic economic loss benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as income loss, replacement services loss, * * * or medical or funeral expense is incurred. Benefits are overdue if not paid within 30 days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, unless the reparation obligor elects to accumulate claims for periods not exceeding 31 days and pays them within 15 days after the period of accumulation.

To ensure compliance with this provision, Minn.Stat. § 65B.54, subd. 2 (1994) adds 15% interest per annum to overdue payments by no-fault insurers. If an insurer denies a claim for benefits or fails to respond in writing within 30 days after reasonable proof of loss is received, the claimant has an immediate right of mandatory arbitration under Rule 5(d) of the Minnesota No–Fault Arbitration Rules. *See* Minn.Stat. Ann. § 65B.525 (West 1986 & Supp.1995). Therefore, the no-fault insurer does not have sole control over the timing of payment: control also lies with the claimant who decides when to apply for benefits and can commence arbitration 30 days after providing adequate proof of loss.

In sum, the date of payment rule is the most practical and efficient method of determining the accrual of indemnity rights under the Act. We are not convinced that the "paying or obligated to pay" language of section 65B.53, subd. 1 was intended to create alternate accrual dates for the no-fault insurer's right of indemnity. A more reasonable explanation for the addition of the words "or obligated to pay" is that the legislature intended to permit no-fault insurers to seek indemnity for future payments to their insureds, as well as for past payments. In other words, if an insurer had made several payments to an insured injured by a commercial vehicle, it could still seek indemnity from the vehicle's insurer for any sums that it was "obligated to pay" to the injured party in the future.

In light of this more reasonable interpretation of the statute, we will adhere to the common law rule for the accrual of indemnity rights of no-fault insurers, and thereby eliminate the need for a factual determination in each case of when the insurer's "obligation to pay" arose.

Affirmed.