**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Respondent,

v.

**James SPARTZ, Appellant.**

No. CX–98–1143.

Court of Appeals of Minnesota.

Jan. 19, 1999.

Review Denied March 30, 1999.

Christopher D. Robinson, Askegaard & Robinson, P.A., Brainerd, MN (for respondent).

Paul J. Phelps, Sawicki Neese & Phelps, P.A., Woodbury, MN (for appellant).

Considered and decided by PETERSON, Presiding Judge, KLAPHAKE, Judge, and ANDERSON, Judge.

## OPINION

ANDERSON, Judge.

This appeal is from a permanent injunction barring no-fault insurance benefits based on a theory of collateral estoppel. Because we conclude that reimbursement of actual income loss under the Minnesota No–Fault Act is not barred by reason of application of collateral estoppel arising from an underinsured motorist verdict, we reverse.

## FACTS

Appellant, James Spartz, was injured in a motor vehicle accident while a passenger in the vehicle of Ernest Knapper. Appellant incurred medical and income loss expenses resulting from the accident. At the time of the accident, appellant was insured for personal injury protection (PIP) benefits under an automobile insurance policy issued by respondent State Farm Mutual Automobile Insurance Company.

On two occasions following the accident, appellant initiated arbitration proceedings with respondent to determine PIP benefits due under Minn.Stat. § 65B.525 (1998). On December 23, 1994, appellant was awarded $9,597.52 in wage loss PIP benefits, at a weekly rate of $134.20 per week. On October 3, 1995, appellant was awarded $1,073.60 in wage loss PIP benefits, at a rate of $67.10. The weekly rate was reduced in the second proceeding in light of evidence that appellant suffered from a pre-existing condition that was aggravated by the car accident. In addition, appellant had previously settled with alleged tortfeasor Ernest Knapper for $20,000.

In 1995, appellant commenced an action against respondent State Farm (1) to revisit the second arbitration decision, and (2) to determine underinsured motorist benefits. See Spartz v. State Farm Mut. Auto. Ins. Co., Crow Wing Ct. File No. C1–95–2358 (Spartz I). At the trial, in a motion in limine, appellant claimed that he was entitled to an adjustment of the wage rate used in the second arbitration because Great West Casualty Co. v. Northland Ins. Co., 548 N.W.2d 279, 281 n. 4 (Minn.1996), had overruled Rodgers v. Progressive Specialty Ins.

Co., 499 N.W.2d 61 (Minn.App.1993), review denied (Minn. June 22, 1993), which had been relied on to fashion the second arbitration PIP award. The district court, on the basis of collateral estoppel, rejected this argument.

The jury concluded that appellant was entitled to past loss of earnings, but found no future loss of earning capacity on the part of appellant. Based on the jury's findings, the court concluded that, because appellant's damages were less than the amount of liability insurance covering Knapper's vehicle, appellant was barred from recovering underinsured motorist benefits from respondent under Minn.Stat. § 65B.43, subd. 17, 19. The court dismissed appellant's complaint with prejudice and awarded respondent reimbursement for reasonable costs and disbursements. No appeal was filed by either party challenging the results.

In October 1997, appellant began a third no-fault arbitration proceeding with respondent seeking PIP wage rate benefits from respondent. Appellant asked for an adjustment of the $67.10 per week wage rate determined in the second arbitration, again citing the supreme court's ruling in Great West. Appellant sought an adjustment and award from September 19, 1995 (the date marking the end of appellant's wage loss benefits under the second arbitration award) to October 17, 1997 (the date the third arbitration was filed).

Respondent then sought to enjoin appellant permanently from further arbitration or suits. The district court granted respondent's summary judgment motion for a permanent injunction of appellant's third arbitration proceeding. The district court made two findings: (1) appellant's third arbitration petition asserted claims based on the same facts as previously adjudicated between the parties in the earlier arbitration proceedings and lawsuit, and (2) that the third arbitration raised the same issues as those previously adjudicated in arbitration and court. Acknowledging that the two previous arbitration awards and judgment had become final, the district court issued a permanent injunction enjoining and restraining appellant from further litigation and arbitration seeking PIP benefits from respondent.

Appellant seeks reversal of the permanent injunction issued by the district court.

## ISSUE

Is an insured's claim for no-fault wage benefits collaterally estopped by a jury finding that the insured had suffered no loss of future earning capacity?

## ANALYSIS

 The supreme court has held that on appeal from summary judgment, a reviewing court must ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the lower court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The sole issue in this case is whether the doctrine of collateral estoppel precludes appellant from arbitrating an issue of economic loss benefits under Minnesota's No–Fault Act. This court has held that if the doctrine of collateral estoppel precludes litigation of an issue, "then there are no genuine issues of material fact and summary judgment" is properly granted. *Ryan v. Progressive Cas. Ins. Co.*, 414 N.W.2d 470, 472 (Minn.App. 1987), *review denied* (Minn. Jan. 15, 1988). But the question of whether collateral estoppel is available "is a mixed question of law and fact, and the trial court's determination does not bind this court." *Green v. City of Coon Rapids*, 485 N.W.2d 712, 718 (Minn. App.1992), *review denied* (Minn. June 30, 1992).

At issue in this case is the operation of the Minnesota No–Fault Act's provision for basic economic loss benefits for injuries arising from the maintenance or use of a motor vehicle under Minn.Stat. § 65B.44, subd. 1 (1998). The Minnesota Supreme Court has held that the construction or interpretation of a statute is a question of law and is reviewed "without deference to the lower courts." *Metropolitan Property & Cas. Ins. Co. v. Metropolitan Transit Comm'n*, 538 N.W.2d 692, 695 (Minn.1995).

Section 65B.44, subd. 1(b), provides a total of $20,000 for income loss, replacement services loss, and other non-medical expenses. This dispute focuses particularly on subdivision 3, which provides compensation for income loss benefits:

> Disability and income loss benefits shall provide compensation for 85 percent of the injured person's loss of present and future gross income from inability to work proximately caused by the nonfatal injury subject to a maximum of $250 per week.

*Id.* at subd. 3 (1998). The obligation of an insurer to pay no-fault benefits is described in Minn.Stat. § 65B.54, subd. 1 (1998): "[b]asic economic loss benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as income loss * * * is incurred."

The parties agree that *Spartz I* is final and beyond appeal. The supreme court has explained that an order or judgment becomes final after the appellate process is terminated or the time for appeal has expired. *Indianhead Truck Line, Inc. v. Hvidsten Transport, Inc.*, 268 Minn. 176, 183, 128 N.W.2d 334, 341 (Minn.1964). Neither party filed an appeal in *Spartz I*.

The district court in the present controversy issued a permanent injunction prohibiting appellant from further litigating loss of earnings under section 65B.44 based on the finality of *Spartz I*. The supreme court has ruled that it is proper for a court to issue a permanent injunction to "restrain the initiation of successive suits and proceedings to relitigate a cause of action" that is based on the same facts with identical issues and parties and that has been already adjudicated with finality. *Favorite v. Minneapolis St. Ry. Co.*, 253 Minn. 136, 141, 91 N.W.2d 459, 463 (Minn. 1958). Based on *Spartz I*, the district court ruled that collateral estoppel barred appellant's third arbitration claim. This court has held that the classic doctrine of collateral estoppel states that a " 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction * * * cannot be disputed in a subsequent suit between the same parties or their privies.' " *Ryan*, 414 N.W.2d at 472 (quoting *Southern Pacific R.R. Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897)).

The sole issue to be decided is whether the issues in *Spartz I* are identical with the

present claim for no-fault insurance benefits and whether the no-fault issues were previously adjudged. The supreme court has held that estoppel requires the party asserting the doctrine to establish that the "precise question" was in fact presented and determined and that estoppel will not apply "'where there is a reasonable doubt as to whether a fact was actually adjudicated.'" *Brooks Realty, Inc. v. Aetna Ins. Co.*, 268 Minn. 122, 125–26, 128 N.W.2d 151, 153–54 (Minn.1964) (citation omitted).

The supreme court has stated that "[m]ost courts have considered an arbitration award to constitute a 'prior adjudication' for purposes of triggering an estoppel." *Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 651 (Minn.1990). The *Aufderhar* court acknowledged that "'arbitration is meant to be a final judgment of both law and fact.'" *Id.* at 651 (quoting *Johnson v. Consolidated Freightways, Inc.*, 420 N.W.2d 608, 613 (Minn.1988)).

In this case, however, the damage issues decided in the second arbitration are only marginally, if at all, at issue in the third arbitration. Appellant is not asking that the third arbitration panel review past awards but only review the law to be applied to new awards.

The Minnesota Supreme Court has examined the difference between medical damages awarded in a negligence action versus no-fault medical damages. Similar to loss-of-earnings benefits found in subdivision 1(b), subdivision 1(a) of section 65B.44 provides no-fault medical expense reimbursement up to $20,000. In *Ferguson v. Illinois Farmers Ins. Group Co.*, 348 N.W.2d 730, 733 (Minn. 1984), the supreme court explained that a jury award of a lump-sum estimate for future medical expenses in a tort claim "will not put a cap on the amount plaintiff can recover against its no-fault carrier" for medical ex-

penses under section 65B.44, subdivision 1(a). The court explained that the "reimbursement of actual expenses is what the No–Fault Act provides." *Id.* We are convinced that just as an award in a negligence action cannot cap medical no-fault benefits, a jury's refusal to award damages for loss of future earning capacity does not bar no-fault benefits for wage or income loss.

No-fault benefits arise from a statutorily mandated contractual relationship between insurer and insured. The legislature has instructed that no-fault benefits are owing when loss accrues, not when the injury occurs, "but as income loss * * * is incurred." Minn.Stat. § 65B.54, subd. 1. No-fault benefits require a demonstration that loss *has* occurred as a result of an accident. But the underinsured motorist claim rested on a determination of whether loss *will* occur.

The jury instruction employed by the district court in *Spartz I* required the analysis of abstract issues that are inapplicable to a no-fault proceeding. The district court read Jury Instruction Guide 160 to the jury.[1] This court has recognized that, as a jury instruction for future loss of earning capacity, JIG 160 focuses on compensation for "loss of the *power* to earn in the future." *Sylvester v. Gleason*, 371 N.W.2d 573, 575 (Minn. App.1985). We also recognized that such recovery is based on factors including "the plaintiff's age, life expectancy, health, occupation, talents, skill and training." *Id.* These are less precise and far different factors from those used under the no-fault act, which defines inability to work "in terms of physical functioning." *Bregier v. National Family Ins. Co.*, 411 N.W.2d 892, 895 (Minn.App. 1987) (stating that "the statutory definition is [not] broad enough to allow inquiry into the insured's state of mind or his prior injuries and claims, no matter how unrelated to the claimed disabling injury"). A jury might be-

---

1. JIG 160. Items of Personal Damage—Future Damage—Loss of Earning Capacity.

If future disability is reasonably certain to occur, you may take into consideration the effect of that disability on [appellant's] future earning capacity. If [appellant's] future earning capacity has been destroyed or reduced by his injuries, you may determine damages for such loss or reduction of future earning capacity.

In determining the amount of such future damages, you should take into consideration the age, health, skill, training, experience, and industry of [appellant], whether the loss of future earning capacity is for a limited period of time or is permanent, and whether the number of years of [appellant's] earning expectancy is equal to or less than [his] life expectancy. 4 *Minnesota Practice*, CIVJIG 160 (1986).

lieve that no loss of future earning capacity has occurred for a variety of reasons based on the evidence produced at the trial of the negligence claim. As appellant noted at oral argument, those reasons could include the belief that appellant might not live long enough to suffer any loss of earning capacity.

On the other hand, no-fault benefits are specific in nature and require proof of loss as opposed to the more prospective analysis for loss of earning capacity. When considering no-fault benefits, the supreme court has ruled that a no-fault insurer

> becomes obligated to pay its insured for economic losses arising from a motor vehicle accident when it receives "reasonable proof of the fact and amount of loss realized."

*Metropolitan Property,* 538 N.W.2d at 696 (quoting Minn.Stat. § 65B.54, subd. 1 (1994)). This retroactive analysis is substantially dissimilar from the analysis the jury was asked to undertake and, as a result, appellant is entitled to submit his claims to an arbitrator as permitted by law.

## DECISION

Appellant is entitled to present his no-fault claim to an arbitrator as permitted by the Minnesota No–Fault Act even though the jury in the underinsured motorist action found that he suffered no loss of earning capacity. As a result, the district court erred in granting a permanent injunction in favor of respondent insurance company.

**Reversed.**