Barbara J. SIMPSON, et al., Appellants,

v.

AMERICAN FAMILY INSURANCE COMPANY, a member of the American Family Insurance Group, Madison, Wisconsin, Respondent.

No. C9–99–964.

Court of Appeals of Minnesota.

Jan. 4, 2000.

· Robert A. Docherty, Somsen, Schade & Franta, PLC, New Ulm, MN (for appellants).

Todd S. Lundquist, Lundquist Law Offices, Mankato, MN (for respondent).

Considered and decided by SHORT, Presiding Judge, WILLIS, Judge, and ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant challenges the district court's determination that her insurer is required to pay no-fault income loss benefits only after she has exhausted her jury award for loss of future earning capacity. Because the reasoning in *Ferguson v. Illinois Farmers Ins. Group*, 348 N.W.2d 730 (Minn.1984) logically applies to no-fault income loss benefits, we affirm.

## FACTS

In 1995, appellant Barbara Simpson was seriously injured in an automobile accident and brought an action against the two drivers involved in the accident. The case against one driver settled; the second went to trial and the jury awarded appellant $75,000 for "future loss of earnings (earning capacity)."

After the trial, appellant filed a claim with respondent American Family Mutual Insurance Company, her no-fault insurer, for payment of income loss benefits. Respondent denied appellant's request for benefits, claiming that appellant had already received full compensation for her income losses from her tort award. Appellant then brought a declaratory judgment action against respondent. Appellant claimed that the $75,000 jury award for

"future loss of earnings (earning capacity)" did not compensate her for future income loss and that respondent was required to pay for income loss benefits according to her no-fault insurance policy without receiving a credit for the jury award.

The parties stipulated to the facts and filed cross motions for summary judgment. The district court granted appellant's motion for summary judgment and held that, despite the tort award, respondent was required to pay no-fault income loss benefits for appellant's actual income losses. But, the court also held that respondent's obligation to provide no-fault income loss benefits began only after appellant had exhausted her tort award for loss of future earning capacity. This appeal followed.

## ISSUE

Is a tort award for loss of future earning capacity the same as no-fault income loss benefits for the purpose of determining when a no-fault carrier is required to pay income loss benefits?

## ANALYSIS

■■■ Appellant challenges the district court's determination that she must exhaust her tort award for loss of future earning capacity before seeking income loss benefits from her no-fault carrier.[1] On appeal from summary judgment, this court must determine if there are any genuine issues of material fact and whether the district court erred in its application of the law. *Boutin v. LaFleur*, 591 N.W.2d 711, 714 (Minn.1999). The facts are undisputed, and the only question before this court is whether the district court erred in interpreting the legal effect of the jury award on an insurer's obligation to pay no-fault benefits under Minn.Stat.

§ 65B.44, subd. 3 (1996). When the facts are not in dispute the reviewing court need not defer to the district court's application of the law. *State ex rel. Morrow v. La-Fleur*, 590 N.W.2d 787, 791 (Minn.1999); *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). Questions of law, including the interpretation of statutes, are reviewed de novo. *Bol v. Cole*, 561 N.W.2d 143, 146 (Minn.1997).

The Minnesota No–Fault Act requires that automobile insurance policies "provide compensation for 85 percent of the injured person's loss of present and future gross income from inability to work." Minn. Stat. § 65B.44, subd. 3. The no-fault insurer covering the occupied motor vehicle has the primary obligation to pay basic economic expenses. Minn.Stat. § 65B.61, subd. 1 (1996); *Lobeck v. State Farm Mut. Auto. Ins. Co.* 582 N.W.2d 246, 250 (Minn. 1998). The purpose of the No–Fault Act is to provide first-party benefits to the insured and eliminate the need to prove fault before an injured party can recover medical or other expenses. Minn.Stat. § 65B.42(1) (1996); *Lobeck*, 582 N.W.2d at 249.

In addition to ensuring prompt and guaranteed coverage of benefits the No–Fault Act also seeks to avoid a double recovery by the injured party. Minn.Stat. § 65B.42(5) (1996). In order to avoid a double recovery in negligence actions, the No–Fault Act offsets tort awards by the amount of basic economic benefits already paid by the no-fault provider. Minn.Stat. § 65B. 51, subd. 1 (1996). Until 1983, it was unclear whether tortfeasors were also entitled to an offset for future economic damages. Prior to 1983, Minn.Stat. § 65B.51 provided that "there shall be deducted from any recovery the value of

---

1. There is confusion among the parties as to what damages the jury awarded under the heading "future loss of income (earning capacity)." The confusion stems from the duplicative language on the jury instruction sheet. "Earning capacity" is the proper term used to describe the future economic damages that a jury awards in a negligence action.

The additional term "loss of income" more appropriately describes the no-fault benefits provided for actual income loss. Although both the terms "loss of income" and "earning capacity" were used, the jury award represents damages for loss of future earning capacity.

basic or optional economic loss benefits paid or payable or *which will be payable in the future."* Minn.Stat. § 65B. 51, subd. 1 (1982) (emphasis added). In 1983, Minn.Stat. § 65B.51 was amended; the words "or which will be payable in the future" were deleted from the statute. 1983 Minn. Laws ch. 243, § 1, subd. 1. *See Haugen v. Town of Waltham,* 292 N.W.2d 737, 740–41 (Minn.1980) (noting that although Minn.Stat. § 65B.52 (1978) comported with the policies of the No–Fault Act, the lack of guidelines for the effective administration of Minn.Stat. § 65B.51 (1978) made the application of the deduction inequitable and unjust; and further holding that the provision of section 65B.51, which required the deduction of future economic loss benefits from a tort recovery was unenforceable). A year after the amendment, the supreme court held that an accident victim could recover full future economic damages from the tortfeasor without receiving an offset. *Ferguson v. Illinois Farmers Ins. Group,* 348 N.W.2d 730, 733 (Minn.1984). In addition, *Ferguson* required the exhaustion of a tort award for future medical expenses before an individual could recover no-fault benefits for additional medical expenses. *Id.*

Appellant seeks to limit the *Ferguson* analysis of future economic damages to the recovery of medical benefits. Appellant argues that *Ferguson* does not apply here; appellant contends that, unlike medical expenses, a jury's award for loss of future earning capacity is not the same item of damage as no-fault income loss and therefore she is entitled to recover no-fault income loss benefits without first exhausting her tort award. Appellant argues that loss of future earning capacity and income loss are two different types of injuries because they are calculated differently.

Although loss of future earning capacity and income loss are calculated in different ways, both damage calculations measure reduced economic productivity. The difference in calculation between the two awards is due to differences in the purposes of each award, the timing of each award, and the evidence available to assess the amount of damages for each award.

■ A tort award for loss of future earning capacity is awarded to compensate for the impairment of one's ability to work due to the negligence of another. *See Midway Nat'l Bank v. Estate of Bollmeier,* 504 N.W.2d 59, 65 (Minn.App.1993). Jury awards for future economic losses are merely estimates of damages likely to occur in the future. During a trial it is difficult to prove future damages with absolute certainty and therefore future damages are recoverable if they are reasonably certain to occur. *Carpenter v. Nelson,* 257 Minn. 424, 427, 101 N.W.2d 918, 921 (1960); *Kwapien v. Starr,* 400 N.W.2d 179, 183 (Minn.App.1987). Loss of future earning capacity focuses on the impairment of the power to earn and does not require proof of actual lost earnings. *Wilson v. Sorge,* 256 Minn. 125, 130–31, 97 N.W.2d 477, 482 (1959). Earning capacity is not measured on the basis of past earnings because the estimate of future income may be distorted; for example, the prior earnings of a student, a second career housewife or a person near retirement may not be an accurate measure of future earnings because of their changing earning patterns. *Id.* There is a danger that future earnings awards will be undervalued if past income is used as the sole basis for assessing the value of a tort award for future damages. *Id.* at 132, 97 N.W.2d at 483.

■ Although tort actions require a jury to estimate the level of damages sufficient to compensate an individual for injuries that are likely to occur in the future, the same is not true of benefits awarded under the Minnesota No–Fault Act.[2] The

---

**2.** The fundamental differences between the way future earning capacity is handled in tort and payment of actual income loss in the no-

fault system was the basis for this court's holding in *State Farm Mut. Auto. Ins. Co. v. Spartz,* 588 N.W.2d 173, 176 (Minn.App.

payment of no-fault benefits requires a showing of actual income loss. Minn.Stat. § 65B. 54, subd. 1 (1996). As noted earlier, the primary purpose of the Minnesota No–Fault Act is "[t]o relieve the severe economic distress of uncompensated victims of automobile accidents." Minn.Stat. § 65B. 42(1). Requiring a showing of actual loss ensures that the insured is compensated and that the insurer is paying benefits for real loss, not just estimated loss. See *Metropolitan Property & Cas. Ins. Co. v. Metropolitan Transit Comm'n,* 538 N.W.2d 692, 696 (Minn.1995) (noting that it would be commercially impracticable and unreasonable to require insurers to pay benefits before there is actual loss). Put another way, loss of future earning capacity is a broad, somewhat ill-defined, category of damages. Income loss under the Minnesota No–Fault Act is a much narrower and more concrete concept.

The Minnesota No–Fault Act relieves the economic distress of automobile accident victims by providing prompt payment of benefits regardless of fault and also prevents overcompensation by providing offsets to avoid double recovery of benefits. Minn.Stat. § 65B.42, subds. 1, 5. Both of these purposes are served by ex-

tending the Ferguson analysis to no-fault income loss benefits. While the comparison is not exact, both loss of future earning capacity and income loss attempt to compensate an individual for economic damages from the inability to work because of injury. Under a Ferguson analysis, the insurance company continues to cover wage loss damages as they occur to the extent that they exceed the tort award for loss of future earning capacity and do not exceed the policy limits.

## DECISION

The district court did not err in holding that respondent need only pay income loss benefits when appellant's tort award has been exhausted. This analysis ensures that appellant is fully compensated, but not overcompensated, for her economic injuries.

**Affirmed.**

1999), *review denied* (Minn. Mar. 30, 1999). In *Spartz,* we held that the failure of a jury to award damages for loss of future earning

capacity did not bar a claim for income loss benefits. *Id.*