*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1089**

Mark L. Wiebusch,
Respondent,

vs.

Donald Leo Tschida,
Appellant.

**Filed May 4, 2015
Reversed and remanded
Stauber, Judge**

Ramsey County District Court
File No. 62-CV-12-517

Kay Nord Hunt, Lommen Abdo, P.A., Minneapolis, Minnesota; and

David J. Hoekstra, David M. Werwie & Assoc., St. Paul, Minnesota (for appellant)

Sharon L. Van Dyck, Van Dyck Law Firm PLLC, Minneapolis, Minnesota; and

Paige J. Donnelly, Paige J. Donnelly, Ltd., St. Paul, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Schellhas, Judge; and Hooten, Judge.

**UNPUBLISHED OPINION**

**STAUBER**, Judge

In this appeal from a judgment following a jury verdict for damages arising out of an automobile accident, appellant argues that the district court erred by giving a

misleading jury instruction and denying his motion for a new trial. We reverse and remand for further proceedings.

## FACTS

In 2009, appellant Donald Leo Tschida and respondent Mark L. Wiebusch were involved in a car accident. Wiebusch was the fifth in a line of seven cars. Tschida, the driver of the seventh car, rear-ended the sixth car in line, resulting in a chain-reaction accident. Wiebusch sued Tschida, alleging injuries sufficient to satisfy no-fault thresholds.

Wiebusch initially sought damages for past and future physical injuries, pain and discomfort, past and future medical expenses, and past and future "wage loss and loss of earning capacity on account of such bodily injuries." Both parties retained experts to testify about the wage loss and diminution in wage-earning capacity, but on the third day of the trial, Wiebusch agreed to waive all claims of wage loss and loss of future earning capacity.

Before the waiver, Wiebusch's brother testified that Wiebusch no longer wanted to "get involved in the business" of real estate, a profession he shared with his brother. Wiebusch's son testified that his father was having trouble keeping up with the demands of his real-estate business. Before the accident, Wiebusch would work 12 to 14 hours a day, but after the accident, his son had to assume some of his work activities because Wiebusch was "too sore" to perform them. Wiebusch's significant other described a man who "loved his job" and "[w]orked long days" before the accident. After the accident, he took "entire days off, which he never did [before the accident]." The testimony of these

witnesses did not include specific financial testimony related to wage loss, but cumulatively described how Wiebusch's injuries affected his ability to work. During his testimony, which occurred after the waiver of the wage-loss claims, Wiebusch began to describe his work activity, but appellant's counsel objected when the testimony veered into the area of income loss.

The district court's jury instructions explained the terms "permanent injury" and "sixty-day disability," two of the no-fault insurance thresholds under Minn. Stat. § 65B.51 (2014). "Disability" was defined to mean "that an injured person is unable to engage in substantially all of his or her usual and customary daily activities, for 60 days or more." The jury was instructed to consider whether Wiebusch should be awarded damages for past and future bodily and mental harm, including pain, disability, and emotional distress, and to consider the type, extent, severity, and painfulness of the injuries, treatments given, duration of the injury, and any other relevant factors. Due to the waiver, the jury was not instructed about wage loss or future earning capacity.

During closing arguments, Wiebusch's attorney argued as follows:

> His problem is he's got this pain in these areas, which I won't go through, you know them, and he's got that every day. It's affecting him every day.
> We go to the next question. Any disability. When you're talking about that, you're talking about his – is his activity level affected by the pain? You bet it is. *We know he didn't work for a period of time.* We know he didn't give up all of these activities. The things you like to do, most of us, we look forward to the weekend because that's what drives a lot of us. Oh, boy, I'm going to do this and that. But he doesn't have that to look forward to. He can go out with his pain. He can do things. But nobody's going to do it if it causes you pain. I can walk on red-hot coals. I won't do it

though because it's too darn painful. What he's doing is he has the pain, so he doesn't do these things he wants to do because of the pain. And that brings him to –

(emphasis added). At this point, Tschida's counsel objected, in an unrecorded bench conference, to the mention of "work" because of the waiver of the wage-loss claims. Wiebusch's counsel finished his argument without further references to respondent's ability to work.

At the end of the argument, and just before the jury began deliberations, the district court added the following impromptu remarks:

> Counsel for defense asked me for one clarification with respect to the damages being sought by the plaintiff. [Both lawyers] referred to the fact that Mr. Wiebusch has given up his claim for damages for past wage loss and for future loss of earning capacity. He's not asking for damages for any past wage loss. However, he is entitled, as your instructions will tell you, for damages, for past damages, for bodily and mental harm. And bodily and mental harm are further described in your instructions as pain, disability and emotional distress. He's also entitled to damages – future damages – for pain, disability and emotional distress, or for future damages for bodily and mental harm.

> There was a reference during closing by [Wiebusch's counsel] that Mr. Wiebusch was off work for a while. And you have to decide how long he was off of work for a while, but you can't award him damages for lost wages during that period of time. I don't know how you'd do it. Number one, you don't have any documents that tell what his wages were. But even if you did have some information that would allow you to do that, you can't, for two reasons: He gave up his past wage loss claim, and you can't speculate about damages. You've got to have something in the facts to tie it to.

> *But to the extent that he's harmed because he can't do things he used to do, and one of those things was to work, he can't work as much as he used to, he claims, if you believe*

*that, that he couldn't work as much as he did in the past and he might not be able to work as much as he used to in the future, that's a harm. You figure out what kind of value you want to put on that harm. Instructions allow you to do that. But you can't measure it as lost earning capacity or past wage loss.*

*I hope that helps you. But I think that's a fair statement of the law and what the instructions are.*

(Emphasis added.) The district court did not tell counsel that it intended to make a corrective instruction and did not inform counsel of the content of the instruction. Tschida's counsel did not have an opportunity to object until the jury retired to deliberate. The district court stated that it was a fair statement of law that emphasized the concept of disability.

The jury returned a non-unanimous verdict, determining that Wiebusch was not permanently injured but was disabled for more than 60 days, and awarding damages totaling $378,024.17. Tschida moved for a new trial, rejection of a perverse verdict, judgment as a matter of law, and a collateral-source deduction. The district court granted the collateral-source deduction, but denied the remaining motions. The district court reasoned that its statement was not a curative instruction because Tschida's counsel did not request a particular instruction, but that the statement was a "clarification" that did not trigger the application of Minn. R. Civ. P. 51.02 (requiring court to inform parties of a proposed instruction). Further, the district court concluded that any error was harmless and did not provide a basis for a new trial.

Having denied Tschida's post-trial motions, the district court issued its findings, conclusions, and order for judgment, adopting the jury's special-verdict findings and awarding Wiebusch damages. Judgment was entered, and this appeal followed.

**D E C I S I O N**

We review the district court's decision to grant or deny a motion for a new trial for an abuse of discretion. *Frazier v. Burlington N. Sante Fe Corp.*, 811 N.W.2d 618, 625 (Minn. 2012). The district court may grant a new trial if there were irregularities in the proceedings that deprived the moving party of a fair trial or if errors of law occurred at trial. Minn. R. Civ. P. 59.01(a), (f). Improper jury instructions can be the basis for a new trial if the error is prejudicial. *George v. Estate of Baker*, 724 N.W.2d 1, 9-10 (Minn. 2006).

A district court has considerable discretion in its choice of jury instructions, but the district court errs if a jury instruction materially misstates the law. *Youngquist v. W. Nat'l Mutual Ins. Co.*, 716 N.W.2d 383, 385-86 (Minn. App. 2006). "If an erroneous jury instruction destroys the substantial correctness of the charge, causes a miscarriage of justice, or results in substantial prejudice, a new trial is warranted." *Id.* at 386. An error is prejudicial if there is a reasonable likelihood that the erroneous instruction had a significant effect on the jury's verdict. *Id.* If an instruction is erroneous, but the reviewing court is unable to determine whether it affected the verdict, the moving party should be granted a new trial. *Id.* These principles apply not only to the court's jury instructions, but also to its curative instructions. *Estate of Baker*, 724 N.W.2d at 9-10. Jury instructions must be considered as a whole to determine whether they conveyed "a

clear and correct understanding of the law of the case as it relates to all the parties involved." *Domagala v. Rolland*, 805 N.W.2d 14, 29 (Minn. 2011). "[A] jury instruction may not be attacked successfully by lifting a single sentence or word from its context. Where instructions overall fairly and correctly state the applicable law, appellant is not entitled to a new trial." *Hilligloss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn. 2002) (quotation and citation omitted).

A party must make a timely objection to an instruction. Minn. R. Civ. P. 51.03. Where, as here, a party has not been informed of an instruction before it is given, that party must object "promptly after learning that the instruction . . . has been given." Fundamental errors of law are reviewable on appeal if they are assigned as errors in the motion for a new trial. *Lewis v. Equitable Life Assur. Soc'y of the U.S.*, 389 N.W.2d 876, 886 (Minn. 1986).

Tschida asserts that the district court's curative instruction was an improper statement of the law and that the instruction raised the issue of loss of future earning capacity despite Wiebusch's waiver of this cause of action by alluding Wiebusch's inability to work.

"A tort award for loss of future earning capacity is awarded to compensate for the impairment of one's ability to work due to the negligence of another. . . . Loss of future earning capacity focuses on the impairment of the power to earn and does not require proof of actual lost earnings." *Simpson v. Am. Family Ins. Co.*, 603 N.W.2d 860, 863 (Minn. App. 2000). In the standard jury instruction explaining loss of future earning capacity, the jury is instructed:

> If you find that future disability is reasonably certain to occur, you may consider the effect of that disability on [the plaintiff's] future earning capacity. Consider what the person is able to earn in the future. Consider whether [the plaintiff's] future earning capacity has been destroyed or reduced. You may decide damages for this loss or reduction of future earning capacity.

4A *Minnesota Practice*, CIVJIG 91.35 (2014). This instruction includes other factors for the jury to consider, including the plaintiff's age, health, skill, training, experience, work habits, length of loss of earning capacity, and years of earning expectancy. *Id.*

The district court's impromptu instruction mirrors the elements of future-earning-capacity instruction. The district court emphasized that Wiebusch was not asking for past wage loss, but it did not state in an equally clear fashion that Wiebusch waived damages related to future earning capacity. Instead, the district court stated,

> But to the extent that he's harmed because he can't do things he used to do, and one of those things was to work, he can't work as much as he used to, he claims, if you believe that, that he couldn't work as much as he did in the past and he might not be able to work as much as he used to in the future, that's a harm. You figure out what kind of value you want to put on that harm. Instructions allow you to do that. But you can't measure it as lost earning capacity or past wage loss.

Although no specific financial testimony about loss of future earning capacity was introduced at trial, Wiebusch's witnesses testified in some detail about factors included in the future-earning-capacity instruction, including Wiebusch's health, skill, experience, training, and loss of ability to perform his job. The lack of financial testimony is not critical; "[b]ecause future damages such as this are impossible to prove with absolute

certainty, the rule is that recovery may be had if future damage is reasonably certain to occur." *Kwapien v. Starr*, 400 N.W.2d 179, 183 (Minn. App. 1987).

The district court's prepared jury instructions, which the jury possessed during deliberations, were a correct statement of the law. Generally, we review jury instructions as a whole, rather than singling out isolated phrases. *See Domagala*, 805 N.W.2d at 29 (instructing the reviewing court to view jury instructions as a whole). But, an erroneous instruction that "destroys the substantial correctness of the charge, causes a miscarriage of justice, or results in substantial prejudice" warrants a new trial. *Youngquist*, 716 N.W.2d at 386. We are particularly troubled here because the misleading instruction was the last thing the jury heard before retiring to deliberate. And, although Tschida's counsel did not object before the jury retired, he was not given the opportunity to do so and was not informed of the district court's intent to deliver a curative instruction or of the content of the curative instruction. *See* Minn. R. Civ. P. 51.02 (providing that the district court must inform parties of its proposed instructions before instructing the jury and give parties an opportunity to object on the record and out of the jury's hearing before delivering an instruction); 51.03 (stating that a party who has not been informed of an instruction must object promptly after learning that the instructing will be, or has been, given).

Finally, in assessing whether the erroneous instruction had a significant effect on the jury's verdict, we note that in this non-unanimous verdict, the jury found that Wiebusch was disabled for at least 60 days, but was not permanently disabled. Despite

this, the jury awarded Wiebusch almost $400,000, a sizable verdict for an injury of limited duration. The disproportionate size of the verdict suggests jury confusion.

"If a jury instruction is erroneous and an appellate court is unable to determine whether the error affected the jury, a new trial should be granted." *Youngquist*, 716 N.W.2d at 386. Because of the misleading nature and the timing of the instruction, and the size of the verdict, we are unable to conclude that the instruction did not have a significant effect on the jury's verdict. We therefore reverse and remand this matter to the district court for a new trial.

**Reversed and remanded.**